In re the MARRIAGE OF Linda Arline HUGHES and Terry H. Hughes.

Linda A. Hughes, Respondent,

and

Terry H. Hughes, Appellant.

No. 15878-2.

Missouri Court of Appeals,
Southern District,
Division Two.

July 7, 1989.

Lynn M. Ewing, III, Ewing, Carter, McBeth, Smith, Gosnell, Vickers & Hoberock, Nevada, for respondent.

Dennis J.C. Owens, Kansas City, for appellant.

MAUS, Judge.

Ex-husband Terry Hughes (hereinafter "father") filed a motion to modify certain provisions for child support in a previously modified dissolution decree. He also filed a motion asking the trial court to hold ex-wife Linda Hughes (hereinafter "mother") in contempt. The motions were consolidated for hearing. The father appeals from the denial of both motions.

This case had its genesis in a dissolution decree entered on September 8, 1981. That decree placed four children in the custody of their mother, subject to reasonable visitation of the father. The children and their birthdays were:

| | |
|---|---|
| Kelly J. Hughes | –December 8, 1963 |
| Casey Michael Hughes | –September 27, 1965 |
| Becki Maureen Hughes | –April 28, 1968 |
| Devin Christopher Hughes | –November 8, 1971 |

The decree provided the father should pay the mother $150 "per month per child until such time as each child becomes 18 years of age or completes High School, whichever shall occur the later." Devin died April 10, 1988.

On February 1, 1985, upon the mother's motion the circuit court modified the provisions for child support. The modified decree provided the father should pay $225 per month for Devin and Becki "until such time as the child becomes 18 years of age or completes high school, whichever shall occur the later." It also provided he should pay $300 per month for Casey "until the child reaches the age of 21 years, if he is attending a fully accredited, publicly supported college or university as a full-time student, unless he marries or otherwise becomes emancipated." Kelly had married and was emancipated. Upon the mother's appeal this court reached the following determination. "This court finds that the trial court's order should be reversed and the decree modified to require respondent to support all three children until they reach age 21 or are emancipated." *In re Marriage of Hughes*, 734 S.W.2d 280, 282 (Mo.App.1987). On September 4, 1987, in response to the mandate of this court, the circuit court entered an "Amended Order Modifying Decree of Dissolution as to Child Support."

On February 6, 1988, the father filed a motion to further modify the provisions for child support. His prayer was "that the Court enter an order holding that Casey Michael Hughes be considered emancipated as of July, 1985; and that Becki Maureen Hughes be considered emancipated as of February 22, 1986...." The date is not clear from the record, but apparently on April 4, 1988, the father filed a motion to hold the mother in contempt because she "engaged in a vicious campaign of alienation in an attempt to desstroy [sic] the respondent's relationship with his children." He prayed that she be punished and for his costs, including attorney fees. As stated, the trial court denied both motions. The father states three points on appeal.

It is unduly repetitious to restate some of the limitations upon appellate review. But it is necessary as the disposition of this appeal is controlled by the following precepts.

"[T]he trial judge resolves conflicts in the evidence and determines the credibility of the witnesses and may accept their testimony entirely or in part."

*Clark County Sales Co., Inc. v. Hester*, 732 S.W.2d 569, 571 (Mo.App.1987).

"A trial court, functioning as a fact-finder, can draw all reasonable inferences from the evidence presented to it and can base its ultimate findings upon such reasonable inferences."

*School Dist. of Springfield R-12, etc. v. Transamerica Ins. Co.*, 633 S.W.2d 238, 249 (Mo.App.1982).

"The judgment of the trial court should be affirmed 'unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law.'"

*Trenton Trust Co. v. Western Surety Co.*, 599 S.W.2d 481, 483 (Mo. banc 1980).

The father's first point is that the circuit court erred in not finding Becki to be eman-

cipated. To support this point he defines emancipation by implication as follows. "Implied emancipation exists without any express agreement, where the parent through either acts or conduct, impliedly consents that his or her child may leave home and shift for himself or herself."

He cites as controlling the following bits of evidence. Becki first moved from her mother's home February 22, 1986. In June 1986, Becki had obtained employment, was not living with her parents, and had moved in and was living with her friend. Becki cohabited with a boyfriend. He also argues "[t]he circuit court failed to uphold the terms of the settlement agreement entered into by the parties. The property settlement agreement incorporated into the decree of dissolution, dated September 8, 1981, provided that the 'duty of the husband to pay [child] support to wife shall terminated [sic] upon any child not residing with her for a period of 30 days....'"

The father's argument does not take cognizance of a full definition of emancipation by implication.

> "Our courts have declared that emancipation is the ' "freeing of a child *for all the period of its minority* from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." 67 C.J.S. Parent and Child § 86, page 811.' *In re Marriage of Heddy,* 535 S.W.2d 276, 279 (Mo.App.1976)." (Emphasis added.)

*Black v. Cole,* 626 S.W.2d 397, 398 (Mo. App.1981).

Applicable corollary rules are the following. Employment and retention of earnings do not per se establish emancipation. *Royall v. Legislation & Policy Division,* 610 S.W.2d 377, 379 (Mo.App.1980); *Brundige v. Marcum,* 694 S.W.2d 891, 896 (Mo. App.1985); *Biermann v. Biermann,* 584 S.W.2d 106, 108 (Mo.App.1979). Nor does the purchase of an automobile. *Barks v.* *Barks,* 686 S.W.2d 50 (Mo.App.1985). Nor does a period of living apart from the custodial parent. *Brundige v. Marcum,* supra, at 896. Any agreement of the parents limiting the duty of the father to support his children was not binding on the court. *In re Marriage of Hughes,* supra. The burden of proving emancipation is on the party asserting it. *Bopp v. Bopp,* 671 S.W.2d 348, 351 (Mo.App.1984).

■ The basis for the circuit court's determination is established by evidence the father does not acknowledge in his argument. Such evidence includes the following. When Becki left home February 22, 1986, it was in a pique at her mother. She spent one night with a friend. Upon graduation from high school in May 1986, Becki obtained employment and for two or three weeks lived with a friend. She moved back with her mother until she went to college in Warrensburg in the fall. She was unable to continue in the January 1987 semester. She returned home and worked until she resumed college in St. Louis. She lived with a boyfriend for a few weeks until her mother moved to St. Louis. When the mother moved back to Jefferson City, Becki resumed living with the boyfriend while attending St. Louis Community College. She continued to do so until the time of the hearing in May 1988. She planned to return home when school was out.

The mother testified she has from the time of the divorce to the time of the hearing always supplied Becki with some support. It is relevant the resources of the mother were limited to the extent that as of June 30, 1988, the father was in arrears for the support of Becki in the amount of $2,475.00. The mother maintained medical insurance for Becki. While Becki remained in St. Louis and attended college, the mother supplied college fees and money for rent and groceries. When all of the evidence is considered the facts are remarkably similar to *Brundige v. Marcum,* supra, in which the court held "[T]he trial court did not misstate or misapply the law nor find contrary to the greater weight of the evidence in finding that the daughter was not eman-

cipated,...." Also see *Orlowski v. Orlowski*, 762 S.W.2d 842 (Mo.App.1988). This is true under the evidence in this case. The father's first point has no merit.

■ The father's second point is that the circuit court erred in not finding the mother "had conducted a campaign of alienation or that she consistently denied the appellant visitation." It is apparent from the record that unfortunately there was strong animosity between the mother and father. It is also apparent Casey and Becki did not regard their father with affection. However, this does not establish the validity of the point.

The father testified that driving home from Jefferson City he decided "That was too—There was [sic] too many conflicting things that caused descension [sic] amongst the whole family, and I just figured I'd wait till they were 18 and on their own, and I could establish a relationship with my children then." He had testified his only visitations prior to that date were in January 1983 in the mother's home and at Kelly's graduation. When asked if he made prior arrangements for the visitation in the home the father testified: "No. It was hard for me to ever do that, but she had made it known in a letter that I could feel free to stop by and see them." In describing the visitation in the home he said, "It was just—just a brief conversation with them in their home. I didn't try to take them out of the home or—I had no arguments with their mother or anything...." He described the second visitation in the following terms: "I saw Becky [sic] and Casey at their older brother's graduation. I just saw them to speak to them fleetingly at the graduation exercise." In regard to requests that the children visit in his home, the father said "Basically, it was willingness, trying to set something up because, with my conditions, the way I worked and what have you, I couldn't say a set date." The mother testified she never denied the father the right to see his children. There was evidence from which the circuit court could reason-ably conclude the mother did not deny the father visitation.

When asked if the mother had done anything to cause her not to want to see her father, Becki replied, "No. If anything, he's done it to himself...." Casey wrote: "It seems as if dad is mad at us kids because my mom is doing the best she can alone." The record presents an abundance of evidence of acts and statements of the father which engendered the attitude of his children. No purpose would be served by a published record of those acts and statements. The circuit court found the mother did not engage in such a campaign. That determination is supported by the evidence. The point is denied.

■ The father's third point is that the amended order entered by the circuit court September 4, 1987, is void. This amended order required him to support his three younger children "until they reach age 21 or are emancipated". His point is premised upon the contention that before the entry of such amended order he was entitled to notice and an opportunity to present evidence that Casey and Becki had been emancipated after the circuit court hearing upon the mother's motion to modify and before the entry of the amended order.

The father's argument is conclusively rebutted by the fact the amended order was entered in conformity with the unconditional and specific mandate of this court issued in *In re Marriage of Hughes*, supra. It is the law of the case. *Butcher v. Main*, 426 S.W.2d 356, 358 (Mo.1968).

*In re Marriage of Hughes*, supra, was a determination of the mother's motion to modify upon the basis of the facts at the time of the hearing upon that motion. "While all motions to modify divorce decrees in any respect are in a sense a continuation of the original actions, they are in fact independent proceedings." *Simms v. Simms*, 253 S.W.2d 814, 816 (Mo.1953). If subsequent events provided a basis for a further modification, the father had to invoke the jurisdiction of the court by a

subsequent motion to modify. *Berman v. Berman,* 701 S.W.2d 781, 787 (Mo.App. 1985).

The applicable rule is of long standing and has been clearly stated by the Supreme Court.

"Appellant objects because no hearing or trial was had by the circuit court before the entry of its judgment on our mandate. As the directions of the mandate were specific and called for no further trial, the circuit court was not required to give any notice or grant any hearing before entering the judgment as directed."

*Prasse v. Prasse,* 342 Mo. 388, 390, 115 S.W.2d 807, 808 (1938).

The judgment is affirmed.

PREWITT, P.J., and HOGAN, J., concur.