Allen Merle SPARKS, Petitioner–Respondent,

v.

Kathy TRANTHAM (formerly Kathy Sparks), Respondent–Appellant.

No. 17279.

Missouri Court of Appeals,
Southern District,
Division Two.

July 30, 1991.

SHRUM, Judge.

The father, Allen Merle Sparks, brought this action for a judicial determination of his child support payment history, the amount of interest he owed, and whether he was still obligated to make child support payments to the mother, Kathy Trantham, pursuant to a May 4, 1970, divorce decree. The mother appeals from the trial court's judgment that limited the father's child support arrearage to the period September 1, 1982, through August 4, 1987, and declared the parties' child to be emancipated.

## ISSUES

There are three issues presented, the first concerns the sufficiency of the evidence; the second and third are questions of law.

1. Whether there was substantial evidence at trial to support the court's determination that the parties' child was emancipated as of August 1987.

2. Whether the August 31, 1982, amendment to § 516.350 operates retroactively to the period prior to August 31, 1982.

3. Whether certain child support payments made by the father were "duly entered upon the record" pursuant to § 516.-350 thereby reviving the judgment?

## DECISION

The evidence supports the trial court's judgment that the parties' child was emancipated as of August 1987; we affirm that portion of the judgment. Because we have determined that the 1982 amendment to § 516.350 operates retroactively to the period prior to August 31, 1982, we reverse and remand for additional proceedings. We conclude the father's child support payments made during 1979, 1980, and 1981 were not "duly entered upon the record." Therefore, those payments do not revive the judgment, and recovery of unpaid child support payments due before September 1, 1979 (ten years prior to the filing of this action), are barred by § 516.350.

Janet Garrett, Springfield, for respondent-appellant.

J. Christopher Allen, O'Neil & Allen, Lebanon, for petitioner-respondent.

## FACTS

The father and the mother were divorced on May 4, 1970. By the dissolution decree, the custody of their daughter Shannon was placed with the mother, and the father was ordered to pay monthly child support of $100. The father admits he has not fully complied with the child support order; the dispute centers on the amount now due.

In May 1987, Shannon graduated from high school. In August 1987, a month before her 18th birthday and following an argument with her mother, Shannon moved from her mother's rural Marshfield home. The mother apparently agreed to Shannon's departure and helped her move her furniture to an apartment in Springfield. By the time of trial, Shannon had lived in three apartments in Springfield; she had never returned to her mother's home to live.

Shannon enrolled at Southwest Missouri State University for the fall semester 1987. From then until the February 1990 hearing, she was a full-time student every fall and spring semester but one. At the time of the hearing, she was enrolled and was classified as a junior.

Upon her arrival in Springfield, Shannon obtained temporary employment at Kraft where she earned $8.20 an hour. When that job ended in November 1987, she was not employed until June of 1988 at which time she went to work at Michael's where she earned about $4 an hour and worked an average of 20 hours a week. She worked at Michael's for one year and then went to work for Residence Inn where she was employed until February 15, 1990, five days before the hearing. She earned $4 an hour at Residence Inn and worked 32 to 35 hours a week until January 1990 when her weekly hours were reduced to less than 20.

Shannon kept the money she earned, using it to pay her "living expenses" which she described as "rent, utility bills, phone bills, entertainment, food, all the bills that you have when you live out on your own."

Shannon said she considered herself self-supporting although she acknowledged she had received money from her mother and her grandparents, "from my grandparents mainly." She said her mother had given her food, "a lot of laundry detergent," had paid for her health and automobile insurance, and had provided her with furniture and bed linens. Her maternal grandparents and her mother's husband's parents bought her a new car and helped her with living expenses and educational expenses. Shannon also received some financial assistance from her paternal grandparents. The mother admitted that Shannon "uses her earnings however she wishes, and she does use that for her support" but, she added, Shannon earned less than $4,000 in 1989.

Shannon also received financial help from her father for educational expenses, clothing, rent, and entertainment. Much of the father's financial assistance came during the period November 1987 through June 1988 when Shannon was unemployed. There had been little contact between the father and Shannon while she was growing up but, in Shannon's words, they became "close friends" after she graduated from high school and moved to Springfield.

Shannon testified her mother exercised no control over her after she moved to Springfield, stating "I was free to do what I wanted." She did testify about one occasion on which she obtained her mother's permission to travel to France.

When the mother was asked if she still exercised any parental control over Shannon, she answered: "I still think of her as my child, and I do ask her for things. I'll say, 'Shannon, I need you for this,' or 'Please help me. Run an errand for me.' And she always does it...." When asked about other ways she exercised parental control, the mother related occasions when Shannon had asked for and received help rather than instances in which she had exercised control.

In April 1989, the mother initiated proceedings to garnish the father's wages in an effort to collect delinquent child support for the previous ten years. In September 1989, the father brought the present action, and the mother subsequently sought a second garnishment, this time to collect child

support arrearages dating back to the date of the dissolution.

Following the hearing, the trial court found that Shannon was emancipated as of August 1987. The court decreed that the father's "obligation to pay child support for the period of May 4, 1970, through August 31, 1982, is presumed paid due to the running of the ten year statute of limitations" and determined that the child support arrearage was $447.78 and the accrued interest was $3,601.39.

The mother appeals from that judgment.

## EMANCIPATION

In her first point on appeal, the mother contends the trial court's emancipation determination resulted from a misapplication of the law and was against the weight of the evidence. Where the issue is the emancipation of a child, the scope of appellate review is governed by the familiar precepts of *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). *See In re Marriage of Hughes,* 773 S.W.2d 897, 898 (Mo.App. 1989). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy,* 536 S.W.2d at 32. The phrase "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics; it depends on its effect in inducing belief. *Johnson v. Gregg,* 807 S.W.2d 680, 685 (Mo.App.1991). The trial court, functioning as a fact-finder, resolves conflicts in the evidence and can draw all reasonable inferences from the evidence presented to it and can base its ultimate findings upon such

reasonable inferences. *Hughes,* 773 S.W.2d at 898.

"Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child." Section 452.-370.4, RSMo cum. supp. 1990. The purpose of this statutory provision is to "make it absolute" that, unless there are contrary provisions in the dissolution decree or the separation agreement, the child support obligation ends upon the child's emancipation and does not automatically continue during the child's minority. *Bushell v. Schepp,* 613 S.W.2d 689, 691 (Mo.App.1981).

■■■ The appellate courts of this state have defined *emancipation* as the " 'freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.' " *Hughes,* 773 S.W.2d at 899, quoting the predecessor to 67A C.J.S. *Parent and Child* § 5 at 174–75 (1978) and citing *Black v. Cole,* 626 S.W.2d 397, 398 (Mo.App.1981) and *In re Marriage of Heddy,* 535 S.W.2d 276, 279 (Mo.App.1976). Emancipation is never presumed and the burden is upon the party asserting it. *Heddy,* 535 S.W.2d at 279. Emancipation can be accomplished by either expressed or implied consent of the custodial parent. *Vinson v. Vinson,* 628 S.W.2d 376, 377 (Mo.App.1982).

Case law pronouncements concerning emancipation were incorporated into the version of § 452.340 enacted by the General Assembly in 1988. 1 Mo.Family Law, § 14.19 (MoBar 4th ed. 1988). Pertinent portions of § 452.340 are set out marginally.[1]

---

1. 3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:

    . . . .

    (4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent; or

    (5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply.

    . . . .

    5. . . . If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school and so long as the child continues to attend such institution of vocational or higher education, the parental support obligation shall continue until the child completes

█ The arguments under this point focus on the application of § 452.340.3(4) to the evidence developed at the hearing. The mother argues that the trial court's conclusion that Shannon is emancipated is against the weight of the evidence. The mother contends the evidence showed that Shannon "was not self-supporting, but dependent on her parents and grandparents for support" and that "she was not able to supply all her needs without help from the parents and grandparents and step-grandparents." Without discussing the evidence, the mother also asserts there was no expressed or implied consent by her, as the custodial parent, to emancipation.

We believe the evidence supports the conclusion that the mother relinquished Shannon from her control by implied consent. Relinquishment of parental control "may be inferred from a child's attaining a status or position inconsistent with remaining subject to parental care and control ... and from such things as parental acquiescence in the child's working for others, receiving its pay therefor, and spending the money as it pleases." *Rapplean v. Patterson*, 631 S.W.2d 693, 694 (Mo.App.1982).

From the evidence before it, the trial court could have rightly concluded that the mother had relinquished control of Shannon. The mother assisted Shannon in her move to an apartment in August 1987 and subsequently supplied some furnishings to Shannon. She acknowledged Shannon was free to spend her earnings as she pleased and she did not directly dispute Shannon's assertion that she was "free to do what I wanted." Although the evidence establishes that Shannon assisted her mother in various matters, the mother did not offer evidence that she exerted parental control over her daughter.

█ Section 452.340.3(4) also requires that a child be "self-supporting" to be emancipated. We take the mother's argument on this issue to be that because Shannon accepted financial and material assistance from her parents and grandparents and did not earn enough to be totally self-

his education, or until the child reaches the age

sufficient, the statutory requirement that she be "self-supporting" is not met. We disagree.

In several cases, appellate courts of this state have considered the relationship between a child's emancipation and the degree of financial and material assistance that child receives from others. In *Rapplean*, the court affirmed a finding of emancipation of a child who slept at his mother's home and occasionally took his meals there. The mother did not insist he pay part of the household expenses. 631 S.W.2d 694. In *Black*, 626 S.W.2d 397, the court of appeals sustained a trial court determination that a child was emancipated even though he did not pay for his food and housing. (Presumably the child was living with his mother, although the opinion is unclear on that point.) *Id.* at 398.

The facts of *In re Marriage of Berkbigler*, 560 S.W.2d 36 (Mo.App.1977), are similar to the facts before us. In *Berkbigler*, the court of appeals affirmed the trial court's refusal to order the father to pay child support for the eldest of the parties' five minor children. The court stated:

Finally, it is contended the court erred in not granting child support for Janet, the parties' daughter who was then almost nineteen years of age. This young lady, a student at Miss Hickey's College studying fashion design, attended class from 9:00 a.m. to 1:00 p.m. daily and expected to complete school by July of 1977. She had an application in process for a student loan and was employed at the Venture Store earning $2.25 per hour working between twenty and forty hours per week. [The father] had supplied Janet with a car and she purchased her own gasoline, lunches, insurance, long distance calls and personal clothing, most of which she made. She had not been paying her mother room or board. Considering all the circumstances, we find no error in the decree awarding support for only the four younger children.

*Id.* at 39. From *Rapplean, Black*, and *Berkbigler*, we conclude it is not inappropriate for a court to declare a child eman-

of twenty-two, whichever first occurs.

cipated even though the child receives significant financial and other material support from others, including the custodial parent. We do not believe the legislature, in amending § 452.340, intended the phrase *self-supporting* to mean that a child, to be emancipated, must be totally self-sufficient and decline all offers of financial assistance from others, including the custodial parent. We affirm the portion of the judgment declaring Shannon to be emancipated.

■ In her second point on appeal, the mother contends the trial court erroneously applied the statute of limitations of § 516.-350, RSMo 1986, to bar recovery of unpaid child support installments due prior to August 31, 1982. The text of § 516.350 is set out in the margin.[2]

The time limitations of § 516.350, as it existed prior to the 1982 amendment, had been applied to "periodic payments incident to dissolution" and, in several cases, Missouri appellate courts had held "that the statutory period begins to run when the order for installment payments is entered." *In re Marriage of Holt*, 635 S.W.2d 335, 336 (Mo. banc 1982). In *Holt*, Judge Bardgett concluded that "what [those earlier] cases failed to recognize is that decretal installment payments and sum certain judgments, when originally entered, are categorically different. Because of these differences they are incapable of being treated as the same and are not analogous." 635 S.W.2d at 336–37. A periodic child support judgment looks to the future

and "is not at that time (when entered) a judgment of a sum then due and owing as are most other awards of money." *Id.* Judge Bardgett said that, for the reasons stated, the wife in *Holt* would have been entitled to relief under § 516.350, as it existed prior to the 1982 amendment which, at the time of the opinion, was not yet effective. However, because the 1982 amendment to § 516.350 had been signed by the governor, the court held that the revised version of the statute was applicable so that there would "be a consistent and uniform guide for courts when adjudicating similar cases." 635 S.W.2d at 337–38.

The 1982 amendment of § 516.350 by the General Assembly took the form of a reenactment of the existing version as subsection 1 with the following language added: "except for any judgment, order, or decree awarding child support or maintenance which mandates the making of payments over a period of time." Additionally, subsection 2 was enacted as "the legislative attempt to ameliorate the harshness of and hardships created by former § 516.-350...." *Ferguson v. Ferguson*, 636 S.W.2d 323, 324 (Mo. banc 1982). In *Ferguson*, the supreme court made it clear that each periodic child-support payment has its separate ten-year period of limitation. *Id.* Thus, the mother's collection attempts are not barred for child support payments due on or after September 1, 1979, the date ten years prior to the filing of this action.

---

**2.** The portions of § 516.350 in italic typeface were added by the legislature in 1982 to the original version of the section.

1. Every judgment, order or decree of any court of record ... *except for any judgment, order, or decree awarding child support or maintenance which mandates the making of payments over a period of time,* shall be presumed to be paid and satisfied after the expiration of ten years from the date of the original rendition thereof, or if the same has been revived upon personal service duly had upon the defendant or defendants therein, then after ten years from and after such revival, or in case a payment has been made on such judgment, order or decree, and duly entered upon the record thereof, after the expiration of ten years from the last payment so made,

and after the expiration of ten years from the date of the original rendition or revival upon personal service, or from the date of the last payment, such judgment shall be conclusively presumed to be paid, and no execution, order or process shall issue thereon, nor shall any suit be brought, had or maintained thereon for any purpose whatever.

2. *In any judgment, order, or decree awarding child support or maintenance, each periodic payment shall be presumed paid and satisfied after the expiration of ten years from the date that periodic payment is due, unless the judgment has been otherwise revived as set out in subsection 1 of this section. This subsection shall take effect as to all such judgments, orders, or decrees which have not been presumed paid under subsection 1 of this section as of August 31, 1982.*

## RETROACTIVE APPLICATION OF 1982 AMENDMENT TO § 516.350

■ The father argues, however, that the 1982 amendments to § 516.350 do not apply retroactively to periodic payments due prior to August 31, 1982. In support, he relies on *Walls v. Walls*, 673 S.W.2d 450 (Mo.App.1984). In *Walls*, the court held that the former wife's request for execution and garnishment in support of a periodic maintenance award should have been granted "for all sums falling due after August 31, 1982." *Id.* at 451. *Walls* is distinguishable from the instant case. In *Walls* there had been a prior adjudication that the judgment had lapsed. *See Walls v. Walls*, 620 S.W.2d 11 (Mo.App.1981). The amendment to the statute could not be used to renew an already lapsed judgment. 673 S.W.2d at 451.

This court has applied the 1982 amendments to § 516.350 to permit enforcement of unpaid periodic child support payments due prior to August 31, 1982. In *Wimmer v. Wimmer*, 690 S.W.2d 475 (Mo.App.1985), the judgment ordering periodic child support payments was entered April 30, 1969. On May 11, 1984, the mother brought a scire facias proceeding to revive the judgment. *Id.* at 476. This court determined that because there had been no adjudication that the judgment had lapsed, the relief she sought was proper under *Holt* and its progeny.

> Since ... *Holt*, Missouri courts have consistently held that periodic child support judgments that have not been *adjudicated* to have lapsed are not "presumed paid" within the meaning of the last sentence of § 516.350.2. *Holt* is a definitive statement of Missouri law ... and has been consistently followed by the courts of this state.

*Wimmer*, 690 S.W.2d at 477 (citations omitted).[3]

Here, as in *Wimmer*, there has been no adjudication of lapse. The trial court erred in its conclusion that the father's obligations to pay child support for the period September 1, 1979, to August 31, 1982, are presumed paid due to the running of the ten-year statute of limitations of § 516.350.

## DID THE FATHER'S PAYMENTS REVIVE THE JUDGMENT?

■ The father's trial exhibit C indicates he made two child support payments of $75 each in 1979, eight payments of $100 each in 1980, and three $100 payments in 1981. He testified that exhibit C summarized "checks that I sent to my ex-wife." The mother contends those payments revive the judgment thereby entitling her to delinquent payments due since the date of the dissolution.

■ A payment on a judgment "duly entered upon the record thereof" will revive the judgment and extend the ten-year period of limitation to a time "after the expiration of ten years from the last payment so made...." Section 516.350; *Ferguson*, 636 S.W.2d at 324; *Ivie v. Department of Social Services*, 793 S.W.2d 212, 215 (Mo.App.1990). At issue in the case before us is whether the payments the father made to the mother were "duly entered on the record."

■ The word *duly* has a well-recognized meaning: "1. In a proper manner; rightfully, fittingly.... 2. At the expected time; punctually." *The American Heritage Dictionary of the English Language* 403 (1971); "[I]n a due manner, time, or degree...." *Webster's Third New International Dictionary* 700 (1976). We find nothing in the record to indicate the payments the father made to the mother were made a part of the record of the judgment until the father initiated this action September 1, 1989. A delay of more than eight years for entry of the payments on the record does not fit within the meaning of the word *duly*.

In *DeMoranville v. Tetreault*, 654 S.W.2d 71 (Mo. banc 1983), the court addressed the issue of revival of a judgment ordering periodic child support payments.

---

**3.** The *Wimmer* court also noted the relief the mother sought was proper because she sought revival of only that portion of the judgment which accrued during the ten-year period immediately preceding the filing of her action.

The parties in *DeMoranville* were divorced in 1967. The obligor father made no child support payments after August 1968. On February 19, 1980, the father sought a declaration that the 1967 judgment was presumed paid by operation of § 516.350. The supreme court treated the 1967 judgment as revived at the time the father's motion was filed on February 19, 1980, and noted that only child support installments that accrued prior to February 19, 1970, would be barred by § 516.350. *Id.* at 73.

In the case before us, we treat the judgment as revived at the time the father's petition was filed on September 1, 1989. *See DeMoranville,* 654 S.W.2d at 73. That is the date when the father sought the aid of the Missouri courts in determining the present status of the judgment against him. *Id.* With the father's admissions of payment "spread on the record" the judgment was revived and only child support installments which accrued prior to September 1, 1979, are barred. *Id.* We recognize that the revival effected by the father's initiation of this action grants the mother no additional relief than she receives from our holding that the 1982 amendments to § 516.350 have retroactive application.

Because the record does not permit us to determine the credits to which the father might be entitled for the period September 1, 1979, through the date of Shannon's emancipation, we reverse and remand for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

FLANIGAN, C.J., and MAUS, J., concurs.