Wesley L. RAGAN, Jr., and Pat Brown, Plaintiffs–Respondents,

v.

Joseph T. RAGAN, Robert T. Ragan, and Westi J. Adlesich, Defendants,

State of Missouri, Division of Child Support Enforcement, Defendant–Appellant.

No. 20771.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 6, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 1, 1996.

Application to Transfer Denied Nov. 19, 1996.

Rick S. Vasquez, Springfield, for appellant.

W. Patrick Cronan, Cronan & Robinson, Columbia, for respondent.

SHRUM, Judge.

Wesley L. Ragan, Jr. (Father)[1] brought this action for a judicial determination that his twin sons, Robert T. Ragan (Robert) and Joseph T. Ragan (Joseph), became emancipated in September, 1994, although they were then only seventeen years of age. Father's allegations of emancipation were that his sons "moved out of the house and ran away from their father ... [,] they were self-supporting[,] and parental control had been

lifted by express or implied consent." The State of Missouri, Division of Child Support Enforcement (Division)[2] appeals from the trial court's judgment that declared Robert and Joseph emancipated as of September, 1994. Division charges that Father's evidence was not sufficient to support the judgment. This court agrees. We reverse the judgment.

## FACTS

Robert and Joseph, born July 31, 1977, were living with Father prior to September, 1994. Both were attending high school and both had part-time jobs after school. Father testified that in September, 1994, he talked to Robert about saving money and also about living by Father's rules. Robert became angry, an argument ensued, and Robert left the house. Joseph also left and both young men commenced living with Adlesich. They stayed at Adlesich's home thereafter until the summer of 1995, when they reached age eighteen. During that year, Adlesich received a monthly AFDC[3] check from the State of Missouri for the support of Robert and Joseph. Also, during that period both Robert and Joseph lost their jobs.

Regarding his efforts to keep his sons home and support them, Father testified as follows. He did not tell his sons to leave, and in fact asked them repeatedly to return home, once via a letter sent to them. He called the Rolla police department to report them as runaways but was told not to worry about it; that "they're considered adults in ... Missouri and there's nothing they can do." He called Adlesich and asked her to send Robert and Joseph home and not let them stay with her, but she refused his request. He sent several letters to Division in which he asked that agency not to provide

1. Inexplicably, Father's consort, Pat Brown, joined with Father as a plaintiff in this case.

2. In addition to Division, Robert and Joseph were named as defendants, as was their aunt, Westi J. Adlesich (Adlesich). Division was the only defendant that filed responsive pleadings or appeared at trial. Division is the sole appellant. Although no guardian ad litem was appointed for Robert and Joseph as mandated by Rule 52.02(e),

we have concluded that such failure did not invalidate this proceeding as their interests were adequately protected. *See* Rule 52.02(m).

3. Section 208.040, RSMo 1994 authorizes "aid to families with dependent children," hence the acronym AFDC. *See* note 5 in this opinion.

support because he was willing to have his sons in his home. On cross-examination, Father testified thusly:

"Q. [to Father] You didn't consent to them leaving the house?

"A. Consent? Did I give them permission. No. They just left on their own.

"Q. You were opposed, in fact, to them leaving the house; is that not correct?

"A. Right."

Father also testified that both Robert and Joseph were enrolled in high school at all times after they left his home.

The trial court found that Robert and Joseph were "emancipated effective September, 1994 by reason of their voluntarily leaving the family home and becoming self[-]supporting with the implied consent of the custodial parent." This appeal followed.

### DISCUSSION AND DECISION

Division contends that the trial court's emancipation determination was not supported by any evidence that Robert and Joseph were self-supporting or that Father had expressly or impliedly consented to their emancipation. Where the issue is the emancipation of a child, the scope of appellate review is governed by the familiar precepts of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Sparks v. Trantham*, 814 S.W.2d 621, 624 (Mo.App.1991). Thus, we must affirm the judgment of the trial court unless there is no substantial evidence to support it or it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32.

■ Generally, a parent's duty to support is "terminated by emancipation of the child." § 452.370.4.[4] The purpose of this statutory provision is to "make it absolute" that unless there are contrary provisions in the dissolution decree or the separation agreement; the child support obligation ends upon the child's

emancipation and does not automatically continue during the child's minority. *Bushell v. Schepp*, 613 S.W.2d 689, 691[1] (Mo.App. 1981).

■ The appellate courts of this state have defined emancipation as the " 'freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it.' " *In re Marriage Of Hughes*, 773 S.W.2d 897, 899 (Mo. App.1989) (quoting the predecessor to 67A C.J.S. *Parent and Child* § 5 at 174–75 (1978) and citing *Black v. Cole*, 626 S.W.2d 397, 398 (Mo.App.1981) and *In re Marriage of Heddy*, 535 S.W.2d 276, 279[3] (Mo.App.1976)). Emancipation is never presumed and the burden is upon the party asserting it. *Heddy*, 535 S.W.2d at 279. Emancipation can be accomplished by either express or implied consent of the custodial parent. *Vinson v. Vinson*, 628 S.W.2d 376, 377[1] (Mo.App. 1982).

■ Case law pronouncements concerning emancipation were incorporated into the version of § 452.340 enacted by the General Assembly in 1988. 1 Mo. Family Law, § 14.19 (Mo.Bar 4th ed. 1988). Pertinent portions of § 452.340 read:

"3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:

. . . .

(4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent. . . ."

Division's claim that the judgment of emancipation is not supported by substantial evidence has two parts. First, Division argues that there was no evidence that Father

---

4. All references to statutes are to RSMo 1994, and all references to rules are to Missouri Rules

of Civil Procedure (1996), unless otherwise noted.

impliedly consented to the children's emancipation since the only evidence is Father's testimony that he did not consent. Second, it contends that there is no evidence that Robert and Joseph were self-supporting, but to the contrary the only evidence is that as soon as they left Father's custody they immediately became supported by the taxpayers via AFDC. Division suggests that the trial court's decision, if allowed to stand, presents the possibility that any custodial parent who involuntarily loses custody to a third party, e.g., through guardianship or Family Services intervention, can avoid his or her support obligation by claiming emancipation.

In *Sparks,* this court reviewed numerous Missouri decisions that considered the relationship between a child's emancipation and the degree of financial and material assistance that child received from others. We concluded that:

"it is not inappropriate for a court to declare a child emancipated even though the child receives significant financial and other material support from others, including the custodial parent. We do not believe the legislature, in amending § 452.340, intended the phrase *self-supporting* to mean that a child, to be emancipated, must be totally self-sufficient and decline all offers of financial assistance from others, including the custodial parent."

814 S.W.2d at 625–26[4].

Father relies on *Sparks* to argue that "[t]he fact that the boys received AFDC payments to supplement their income should not affect the finding of emancipation." We disagree. The "significant financial and other material support" referred to in *Sparks* and in other cases analyzed in *Sparks* was

contributed either by family members or came from student loans. Support in those cases was not in the form of cash from the state via an AFDC payment.[5] The very nature of the AFDC payment in this case, i.e., cash for a dependent child when necessary to prevent neglect and give proper care, distinguishes this case from *Sparks* and the cases on which *Sparks* relied.

We cannot imagine that the legislature intended the phrase "self-supporting" to mean that a child could achieve that status at the expense of the state by means of AFDC benefits. It was inappropriate for the trial court to hold that Robert and Joseph were self-supporting and emancipated when it was necessary for "a needy eligible relative" to obtain financial aid from the state based on the boys' status as "dependent children." Under the circumstances, there was not sufficient evidence to support the trial court's finding that Father's sons were "self-supporting." Without evidence to support that finding, the conclusion that the children were emancipated in September, 1994, was without evidentiary support and thus was erroneous.

Because of our decision on the "self-supporting" issue, we need not address the "implied consent" issue. Sympathetic though we are with Father's plight, it is a problem and frustration he shares with untold numbers of Missouri parents each year. The remedy, if there be one, lies in the general assembly of this state.

We reverse the judgment of the trial court.

CROW, P.J., and PARRISH, J., concur.

---

5. In pertinent part, § 208.040 reads:
"1. Aid to families with dependent children shall be granted on behalf of a dependent child ... and may be granted to ... [a] needy eligible relative caring for a dependent child ... who:
(1) Is under the age of eighteen ...;
(2) Has been deprived of parental support ... by reason of ... continued absence from

the home ..., and who is living with ... aunt ... in a place of residence maintained by one or more of such relatives as the child's own home, and financial aid for such child is necessary to save the child from neglect and to secure to the child proper care in such home...."