Charles Clifford DOWELL, Respondent,

v.

Crystal Dean DOWELL, Appellant.

No. WD 59556.

Missouri Court of Appeals, Western District.

Feb. 19, 2002.

Application for Transfer Denied May 28, 2002.

Carla G. Holste, Jefferson City, for appellant.

James S. Grantham, Versailles, for respondent.

Before JAMES M. SMART, JR., Presiding Judge, HAROLD L. LOWENSTEIN, Judge and JOSEPH M. ELLIS, Judge.

JOSEPH M. ELLIS, Judge.

Crystal Dean Dowell ("Mother") appeals the trial court's judgment terminating Charles Clifford Dowell's ("Father") obligation to pay child support for the parties' daughter, Amber Dowell.

On October 22, 1999, the Circuit Court of Morgan County entered a judgment dissolving the marriage between Mother and Father. The dissolution decree granted Mother primary physical custody of the parties' minor child, Amber Dowell. Father was ordered to pay Mother $338 each month for child support. He was also ordered to pay an additional $169 per month toward an arrearage of $2,740. On July 19, 2000, Father filed a motion to modify the dissolution decree, in which he alleged that Amber was emancipated and

prayed that his obligation to pay child support be terminated. After a hearing, on January 18, 2001, the trial court formally entered its judgment terminating child support. Mother brings this appeal.

Amber was born on September 8, 1982. She was 17 years old when the court entered its dissolution decree. At the time, she had borne a son, and both she and her son were living with Mother. Sometime in May 2000, Amber decided to move out of Mother's house. Amber and her son moved in with Amber's boyfriend and her son's father,[1] Josh Reed, at his apartment. Shortly thereafter, on May 27, 2000, Amber and Mr. Reed signed a lease for a different apartment and moved into the new premises.

Amber, Mr. Reed and the baby acted and represented themselves as an independent household. Mr. Reed was employed as a cook at the Rail Fence Café. Amber stayed home to care for their child. Mr. Reed's income paid most of the household expenses. However, Amber, on behalf of the family, applied for and received food stamps. When she applied for the food stamps, she declared her household to consist of herself, Mr. Reed and their son. In addition, Amber had previously applied for and was receiving Medicaid benefits for their son.

Father had no objection to Amber's decision to live on her own. Mother was opposed to the arrangement but took no action to stop it. Amber received no support from her parents while she was living with Mr. Reed. Mother did pay her $20 for cleaning her house once, but did not give her additional money because she did not want to give Amber the impression that she supported her living arrangements.

---

1. Father's testimony was that Mr. Reed was the Father of Amber's child. There is no other evidence in the record.

On July 19, 2000, after Amber and Mr. Reed had been living together for approximately two months, Father filed his motion to modify alleging that Amber was emancipated. Approximately a month later, Amber, her son and Mr. Reed left the apartment and moved in with Mother because they were unable to support themselves financially. They were still living with Mother at the time of trial. Amber was once again attending school as a high school senior and had applied and been accepted to business college. She was not working, and Mother stated that she was providing for all of Amber's living expenses, including her clothes, car insurance, gas money and necessary car repairs.

The trial court determined that Amber became emancipated from her parents on June 1, 2000, and that Father's child support obligation ended on that date. All support that Father paid after June 1, 2000, was credited toward the arrearage he owed Mother. This appeal follows.

In her only point on appeal, Mother argues the trial court's finding that Amber became emancipated on June 1, 2000, was not supported by the evidence. She contends that Amber never became self-supporting. In addition, Mother claims she did not relinquish parental control by express or implied consent.

This court will uphold the trial court's judgment unless it is "not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Beckwith v. Giles*, 32 S.W.3d 659, 662 (Mo.App. W.D. 2000). The trial court is in the best position to weigh the evidence, and we should affirm the judgment "under any reasonable theory supported by the evidence." *Id.* We view the evidence in the light most favorable to the verdict and defer to the trial court's determination of witness credibility. *Cutting v. Cutting*, 39 S.W.3d 540, 542 (Mo.App. W.D.2001).

■ "Unless otherwise agreed in writing or expressly provided in the judgment, provisions for the support of a child are terminated by emancipation of the child." § 452.370.4.[2] "The purpose of this statutory provision is to 'make it absolute' that unless there are contrary provisions in the dissolution decree or the separation agreement, the child support obligation ends upon the child's emancipation and does not automatically continue during the child's minority." *Ragan v. Ragan*, 931 S.W.2d 888, 890 (Mo.App. S.D.1996) (quoting *Bushell v. Schepp*, 613 S.W.2d 689, 691 (Mo. App. E.D.1981)).

■ Missouri courts have stated that emancipation occurs when a minor child is freed from the care, custody, control and service of her parents. *Id.* This is generally accomplished when there is a relinquishment of parental control, the child is given the right to receive and retain her own earnings, and the parent's legal obligation to support her is terminated. *Id.* "Emancipation is never presumed, and the burden is upon the party asserting it to show facts proving the emancipation." *Randolph v. Randolph*, 8 S.W.3d 160, 164 (Mo. App. W.D.1999). "A minor child may be emancipated in one of three ways: (1) by express parental consent, (2) by implied parental consent, or (3) by a change of the child's status in the eyes of society." *Denton v. Sims*, 884 S.W.2d 86, 88 (Mo.App. E.D.1994). The third category usually refers to a child who has married or joined the military. *Id.* "However, it may also be shown when a child who is physically and mentally able to care for herself voluntarily chooses to leave the parental home and

**2.** All statutory references are to RSMo 2000 unless otherwise noted.

attempts to 'fight the battle of life on [her] own account.' " *Id.* (quoting *Specking v. Specking,* 528 S.W.2d 448, 451 (Mo.App. 1975)) (quoting Brosius v. Barker, 154 Mo. App. 657, 136 S.W. 18 (1911)). Indeed, in *Brosius v. Barker,* the court declared:

> [W]e hold that where the child, who is physically and mentally able to take care of himself, has voluntarily abandoned the parental roof and turned his back to its protection and influence, and has gone out to fight the battle of life on his own account, the parent is under no obligation to support him.

136 S.W. at 20. Finally, and consistent with the latter holding, a child must be old enough to take care of and provide for herself for emancipation to occur. *Randolph,* 8 S.W.3d at 164.

Many of these concepts were incorporated into the child support provisions of the Dissolution of Marriage Act, Chapter 452, with the Legislative amendment of § 452.340 in 1988, and further amendments in subsequent years.[3] *Ragan,* 931 S.W.2d at 890. Section 452.340.3 provides:

> Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:
>
> (1) Dies;
>
> (2) Marries;
>
> (3) Enters active duty in the military;
>
> (4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent;
>
> (5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply; or

> (6) Reaches age twenty-two, unless the provisions of the child support order specifically extend the parental support order past the child's twenty-second birthday for reasons provided by subsection 4 of this section.

In ruling that Amber was emancipated, the trial court stated in its judgment:

> 3. Somewhere around the end of May, 2000, Amber Nicole Dowell chose to leave the parental home of Respondent, along with her child, and set up residence with her boyfriend, Josh Reed. Amber testified that it was her intention t[o] make a home for herself, her child and boyfriend, and to 'fight the battle of life' on her own. Respondent did not approve of Amber moving in with her boyfriend, but took no steps to stop her.

> 4. From the end of May, 2000, until mid-August, 2000, Amber resided with her child and boyfriend, first in his apartment and then in an apartment leased by her and Mr. Reed.

> 5. During this period of time, Amber conducted herself as an adult in the eyes of society. She and Mr. Reed leased an apartment. Amber applied for and received public assistance benefits, declaring her household to be herself, her child and Mr. Reed.

> 6. During this same period of time, Amber received no financial assistance from her parents, except $20.00 paid to her by Respondent for cleaning Respondent's home.

> 7. Sometime around mid-August, 2000, Amber, her child and Josh Reed moved back into the home of the Respondent. Amber testified she did this because financially they weren't able to make it on their own.

---

**3.** Since 1988, § 452.340 has undergone amendments, some major and others less so, in 1989, 1990, 1993, 1994, 1995, 1997, 1998, and 1999.

8. The Court finds that from the end of May, 2000, when Amber moved from the Respondent's home that she was free to make her own decisions concerning herself and her child, that she was under no parental control and received no parental support, that she conducted herself as an adult in the eyes of society, and that but for the fact that she was having financial difficulties, she would not have returned to Respondent's home.

In the instant appeal, Mother focuses exclusively on § 452.340.3. She reasons that the only provision in that section which arguably could be applicable to Amber is subsection (4), which provides that child support terminates if the child "[b]ecomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent." In doing so, Mother seems to assume that the only way a child can be emancipated is by virtue of the occurrence of one or more of the circumstances set forth in § 452.340.3. This supposition fails to take account of the provision in § 452.370.4, discussed *supra,* that generally "provisions for the support of a child are terminated by emancipation of the child." We note that the word "emancipation" does not appear in § 452.340.3 and that case law tells us that child support is terminated by emancipation of the child, even if § 452.340.3 is inapplicable for some reason. *See Randolph,* 8 S.W.3d at 163–65. We likewise observe that Father's Motion to Modify nowhere mentioned § 452.340.3 or any of the provisions thereof, nor did the trial court's judgment. The motion alleged that Amber was emancipated, and that is what the trial court found and determined.

Nonetheless, Mother argues that the only way Amber could be declared emancipated was if § 452.340.3(4) was applicable. She contends that Amber never became "self-supporting" as required by that statutory provision, and, therefore, the trial court erred in finding her emancipated.

Mother's argument is premised on the fact that Amber did not work outside the home (other than cleaning Mother's house on one occasion) during the time she, Mr. Reed and the baby were living on their own. Mother's contention takes a far too narrow view of the phrase "self-supporting."

In *Sparks v. Trantham,* 814 S.W.2d 621 (Mo.App. S.D.1991), one of the issues was whether a 17–year–old who had completed high school became emancipated when she moved, with her mother's help, into her own apartment, despite the fact that she received financial assistance from her parents and grandparents. *Id.* at 623. The trial court ruled that the child was emancipated. *Id.* at 624. On appeal, the child's mother argued that the child was not 'self-supporting' as required by § 452.340.3(4). *Id.* at 625. She contended that because the child "accepted financial and material assistance from her parents and grandparents and did not earn enough to be totally self-sufficient, the statutory requirement that she be 'self-supporting' [was] not met." *Id.*

The Southern District of this court rejected the mother's assertion. In doing so, the court reviewed several cases that considered "the relationship between a child's emancipation and the degree of financial and material assistance that child receives from others." *Id.* Those cases were *Rapplean v. Patterson,* 631 S.W.2d 693 (Mo. App. E.D.1982) (trial court's finding of emancipation was affirmed where the evidence revealed that the child slept at his mother's home, occasionally took his meals there, and there was no insistence by mother that the child pay part of the household expenses); *Black v. Cole,* 626 S.W.2d 397 (Mo.App. W.D.1981) (appellate

court affirmed the trial court's determination that the child was emancipated where child presumably was living with his mother and taking his meals at her home without paying for the food or housing); and *In re Marriage of Berkbigler*, 560 S.W.2d 36 (Mo.App. E.D.1977) (nineteen-year-old attending college four hours per day, and working 20 to 40 hours per week was emancipated, notwithstanding that father supplied her with a car and that child was not paying mother for room and board).

Based on its review of these cases, the *Sparks* court stated:

> [W]e conclude it is not inappropriate for a court to declare a child emancipated even though the child receives significant financial and other material support from others, including the custodial parent. We do not believe the legislature, in amending § 452.340, intended the phrase *self-supporting* to mean that a child, to be emancipated, must be totally self-sufficient and decline all offers of financial assistance from others, including the custodial parent.

*Sparks*, 814 S.W.2d at 625–26.

■ In this case, Amber did not work outside the home. Mr. Reed, however, had a job outside the home. He worked to make a living for the household that he and Amber had established, while she remained at the apartment to care for their child and maintain the household. Amber and Mr. Reed leased and moved into an apartment together. In addition, Amber applied for and secured food stamps for the household. She did so in her own name, and in the application, she declared the household to consist of herself, Mr. Reed and the baby. She also applied for and was receiving Medicaid assistance for the baby. It is apparent based on this evidence that Amber and Mr. Reed were holding themselves out as a most traditional of family units, notwithstanding the lack of matrimonial bonds.

We agree with the *Sparks* court that the phrase "self-supporting" in § 452.340.3(4) does not mean that a child must be totally self-sufficient and decline all forms of financial assistance. We likewise conclude that it does not mean that one must work outside of a traditional family household. Rather, where a couple jointly pursues independent living, with neither being subject to parental control and neither receiving parental support, and where one partner works outside the home to earn a living and the other maintains the household and cares for their child, both may be considered self-supporting.

■ Mother next claims that, even if Amber was deemed self-supporting, there was no relinquishment of parental control by express or implied consent, as required by § 452.340.3. The record reflects that while Mother did not approve of Amber moving in with Mr. Reed, Mother nevertheless took no steps to stop her. In addition, Mother did not provide Amber with any financial support during the time that Amber, Mr. Reed and the baby were living on their own, nor did she take any action to exercise parental control over Amber. " '[A]s a general rule the fact that a child has entered into a relation which is inconsistent with the idea of his being in a subordinate situation in his parent's family is sufficient to effect an emancipation.' " *Wurth v. Wurth*, 322 S.W.2d 745, 747 (Mo. banc 1959) (quoting *Wood v. Wood*, 135 Conn. 280, 63 A.2d 586, 588 (1948)). Emancipation can be implied from a parent's acquiescence to the child's conduct or circumstances. *Id.* at 746. Moreover, as discussed *supra*, a child can also be considered emancipated when her status "change[s] in the eyes of society." *Randolph*, 8 S.W.3d at 164. From the record before us, there was sufficient evidence for

the trial court to determine that Mother impliedly consented to Amber's emancipation.

As noted previously, Mother's entire argument is premised exclusively on a lack of evidence to support a finding of emancipation under § 452.340.3(4). But she then tries to rely on our decision in *Randolph v. Randolph*, 8 S.W.3d 160 (Mo.App. W.D. 1999), to support her contention. We find this curious in that we made an express finding in *Randolph* that § 452.340.3(4) "manifestly does not apply to Appellant's case, for the acts by which Appellant claims Vanessa became self-supporting occurred before Appellant had any obligation to pay child support." *Id* at 163. Accordingly, we did not analyze whether the custodial parent had relinquished parental control of the child and whether she had become self-supporting, but rather we concentrated our analysis on whether the child had been emancipated based on pertinent case law. *Id.* at 164–65. Thus, *Randolph* is generally irrelevant to Mother's argument in the instant appeal.

Even if we were to assume, *arguendo*, that Mother was contending that there was insufficient evidence to establish that Amber was emancipated under common law principles, *Randolph* is distinguishable and would not compel reversal of the trial court's finding that Amber was emancipated. In *Randolph*, seventeen-year-old Vanessa left the parental home after a family fight. *Id.* at 163. Both parents tried to prevent her from leaving and even sought legal assistance in the hope of forcing her to return home. *Id.* at 164. Neither parent ever consented to her emancipation either expressly or by implication. *Id.* At the time she left, Mother gave her money with which to live, including motel expenses. *Id.* at 163. Vanessa remained away from home for about six months. *Id.* She and her boyfriend stayed at a motel

the first three or four days, then moved in with the boyfriend's cousins for approximately three months, and then they lived with his mother for about six weeks, after which they then stayed in an apartment for about a month, and then Vanessa moved back into the family home. *Id.* During the time she was away, Vanessa had quit school and worked at several jobs. *Id.* When she returned home, she was pregnant and in need of assistance for health insurance. *Id.* Subsequently, Father and Mother separated, and in the ensuing dissolution action, Father argued that Vanessa had become emancipated. *Id.* The trial court disagreed, finding that Vanessa was never emancipated. *Id.* at 163. On appeal, we affirmed the trial court's judgment. *Id.* at 165.

It should first be noted that in *Randolph* the trial court found that the child *was not emancipated*, whereas in the instant appeal, the trial court determined that *Amber was emancipated*. This distinction is significant to both cases because of our standard of review which, as noted previously, requires us to "view the evidence and all reasonable inferences in the light most favorable to the trial court's judgment, 'even if there is evidence that would support a different result.'" *Kidd v. Wilson*, 50 S.W.3d 858, 862 (Mo.App. W.D. 2001) (*quoting Rhodes v. Dir. of Revenue*, 994 S.W.2d 597, 600 (Mo.App. S.D.1999)). "Indeed, we must disregard all contrary evidence and permissible inferences that could have been drawn therefrom." *Id.*

When the evidence in this case is viewed in that light, *Randolph* is clearly distinguishable. In *Randolph*, we found that the evidence revealed that "Vanessa's living arrangements ... were transient, that she received financial assistance and emotional support from [Mother], and that she contacted her family on several occasions and asked to return home." 8 S.W.3d at

165. We also found from the evidence that Vanessa's father had likely prevented her from coming home sooner, that she was never able to take care of and provide for herself, and that she needed help from her parents and her mother provided it. *Id.* Accordingly, we affirmed the trial court's finding that Vanessa was not emancipated. *Id.*

In this case, by contrast, the record, when properly viewed, supports the following findings. Amber chose to leave her parental custodian's home and set up residence with Mr. Reed. Her intention was to make a home for herself, her child and Mr. Reed and to "fight the battle of life" on her own. While not approving, Mother did nothing to stop her or to try to force her return. Amber did not live as a transient. Very shortly after her departure, she and Mr. Reed leased an apartment and set up house. She applied for and received public assistance benefits, declaring her household to be herself, the baby and Mr. Reed. Amber received no financial or emotional support from her parents during her absence. Mr. Reed worked outside the home to financially support the household, while Amber stayed home to care for the baby, do laundry, clean house and prepare meals. Indeed, the record amply supports the trial court's finding that:

> [F]rom the end of May, 2000, when Amber moved from the Respondent's home ... she was free to make her own decisions concerning herself and her child, that she was under no parental control and received no parental support, that she conducted herself as an adult in the eyes of society, and that but for the fact that she was having financial difficulties, she would not have returned to Respondent's home.

From this review, it is apparent that *Randolph*, even if Mother had relied upon its case law analysis, would not compel reversal of the trial court's judgment in this case. Where there is conflicting evidence, emancipation is a question of fact to be decided by the fact finder. *Wurth*, 322 S.W.2d at 747. While the record before us might have supported a different result, we cannot say, based on our standard of review, that the trial court erred in finding that Amber was emancipated.

Accordingly, the trial court's judgment is affirmed.

All concur.