NEW JERSEY DIVISION OF YOUTH AND FAMILY SERVICES, PLAINTIFF, v. V., PARENT OF DEBRA, DEFENDANT.

Juvenile and Domestic Relations Court
Cumberland County

November 30, 1977.

Mr. *William H. Mild,* Deputy Attorney General, And Family Services, for plaintiff (Mr. *William F. Hyland,* Attorney General, attorney)

Mr. *Carl W. Cavagnaro* for defendant (Messrs. *Reuss, Spall & Cavagnaro,* attorneys).

KLEINER, J. C. C., Temporarily Assigned. The novel question raised in these proceedings is: when and under what circumstances should a minor under age 18 be judicially declared emancipated? The history of this litigation

reveals the context within which this question is clearly raised.

Pursuant to *N. J. S. A.* 30:4C–12, the Division of Youth and Family Services (Division) filed a complaint requesting an order to compel the defendant V. to cooperate in an investigation respecting the care then being extended by defendant to her 14-year-old pregnant unmarried daughter Debra. Such an order was granted and thereafter the Division applied to this court for an order making Debra a ward of the court. On September 3, 1975, Debra was placed in foster care pursuant to an order authorizing the Division to provide care and supervision of Debra until one month after the birth of her unborn child.

On April 6, 1976 and on October 28, 1976 orders were again entered extending the foster care arrangement for Debra for additional periods of six months. In each instance this court determined that defendant's psychiatric condition rendered her "unfit to be entrusted with the care and education" of her daughter. *N. J. S. A.* 30:4C–12.

At all times referred to above Debra's infant son continued to reside with her in the foster home originally selected by the Division.

On June 22, 1977 the Division again filed a motion to extend the foster care arrangement for an additional period of six months.

Insofar as the Division had failed to comply with the statutory time requirement of *N. J. S. A.* 30:4C–12, testimony was heard to determine whether defendant's psychiatric condition still rendered her unfit to be entrusted with the care of Debra who as of that date was age 16. The facts elicited at this hearing may be briefly summarized.

Defendant is now residing in Philadelphia, having moved from New Jersey. She resides with her own four-year old son (Debra's brother), is a full-time student at Temple University, and receives public assistance as her sole means of support. The psychiatric ideation which endangered Debra's welfare is no longer evident.

Debra is now a senior in high school where she is enrolled in a college preparatory course and is an honor roll student. She participates in varsity sports and actively partakes in church activities with her foster parents.

In an interview in chambers conducted pursuant to the procedure suggested in *Lavene v. Lavene,* 148 *N. J. Super.* 267, 271, 272 (App. Div. 1977), Debra expressed a firm desire to remain in foster care and not to return to the home of her natural mother. Her decision was predicated upon several reasons: (1) she would prefer to reside in a rural agricultural environment rather than in a large metropolitan area; (2) she prefers to graduate with her present high school class and not have her high school education disrupted by relocation and readjustment to a new school; (3) she is reluctant to remove her own child from his present home insofar his daily care would be transferred from the "foster grandmother" to an unknown babysitter in Philadelphia or to a public day care center which is utilized by the defendant for the daily care of Debra's brother.

It must be noted at this juncture that prior to this hearing, Debra herself, pursuant to *N. J. S. A.* 30:4C–11, executed a voluntary foster care agreement with the Division on behalf of her infant son.

Defendant contends that this court is required to return Debra to her custody insofar as she is no longer "unfit" to provide proper care. *N. J. S. A.* 30:4C–12. Although defendant's interpretation of *N. J. S. A.* 30:4C–12 is essentially correct, the factual background of this case requires that the defendant's condition be rejected, insofar as her view fails to give proper consideration to the competing interest of Debra's independent right to provide care and supervision for her own infant son.

Insofar as defendant's argument would transfer care and supervision of Debra to the defendant; which are indicia of custody, and would naturally affect the life of Debra's infant son, this court is compelled to review the custody decisions

of our courts to determine their applicability to the case at bar.

A decision by this court to automatically return Debra to the custody of defendant would evade the responsibility of the court as *parens patriae* of all minor children. *Sorentino v. Family & Children's Society of Elizabeth,* 72 *N. J.* 127 (1976).

Although our courts are reluctant to deny a parent custody of his or her child, *In re Mrs. M.,* 74 *N. J. Super.* 178, 186 (App. Div. 1962), when the best interests of the child will be clearly served by a custody award to a third party, a finding of parental unfitness is not a prerequisite to the entry of a custody order. *S. M. v. S. J.,* 143 *N. J. Super.* 379 (Ch. Div. 1976).

The pivotal factor and paramount consideration in custody proceedings is the safety, happiness, physical, mental and moral welfare of the child which are the bases upon which a court determines what is in the best interests of the child affected by the court's decision. *In re adoption of B.,* 152 *N. J. Super.* 546 (Cty. Ct. 1977) ; *Sheehan v. Sheehan,* 51 *N. J. Super.* 276, 291 (App. Div. 1958) ; *Fantony v. Fantony,* 21 *N. J.* 525, 526 (1956).

In custody proceedings, in determining best interests the court should take the express choice of the mature child into consideration, *Lavene v. Lavene, supra; Clemens v. Clemens,* 20 *N. J. Super.* 383 (App. Div. 1952) ; *Callen v. Gill,* 7 *N. J.* 312 (1951).

Insofar as there is no statutory authority pursuant to *N. J. S. A.* 30:4C–12 to require Debra to remain in foster care where the natural parent is not deemed "unfit," other decisions of our courts must be reviewed to discover a solution to the dilemma confronting this court, to wit, that based upon the testimony offered, it is this court's conclusion, that it would be in the best interest of Debra and her infant child to be permitted to reside in their present residence.

To effectuate this result, Debra should be declared an emancipated minor, free to make her own well-reasoned de-

cision respecting the environment in which she would desire to reside and to care for, supervise and raise her own child.

Emancipation is the "act by which one who was unfree, or under the power and control of another, is rendered free, or set at liberty and made his own master". "The term is principally used with reference to the emancipation of a minor child by its parents, which involves an entire surrender of the right to the care, custody and earnings of such child as well as a renunciation of parental duties." [*Schumm v. Schumm*, 122 *N. J. Super.* 146, 149 (Ch. Div. 1973)] *Black's Law Dictionary* (4th ed. 1951), 613.

Although *N. J. S. A.* 9:17B–1 *et seq.* statutorily confers civil and contractual rights and obligations upon 18-year olds, that statute has been interpreted as not creating an automatic age level of emancipation. *Schumm v. Schumm, supra* at 150; *Straver v. Straver,* 26 *N. J. Misc.* 218, 222 (Ch. 1948); *Limpert v. Limpert,* 119 *N. J. Super.* 438 (App. Div. 1972). As was stated in *Schumm:*

Prior law is settled that there existed a presumption against emancipation prior to 21, [now 18] and the burden of rebutting that presumption by competent evidence was cast upon the one who asserted it.

In determining if the presumption against emancipation has been met, our courts have looked at the particular facts on a case by case basis.

Thus, in *Leith v. Horgan,* 24 *N. J. Super.* 516 (App. Div. 1953), the court declared that,

* * * obligations incident to the relation of parent and child terminate when the minor child . . . marries * * *. After the marriage * * * the legal relation between her and her parents is no longer the peculiar one that it was when she was an unmarried infant. The parents are now simply members of a group of her close relatives, none of whom is as close as her husband. [at 518]

Obviously, marriage gives rise to a relationship which is inconsistent with the subordinate position which a minor must have in a parent-child relationship. *Wood v. Wood,*

135 *Conn.* 280, 63 A. 2d 586 (Sup. Ct. Err. 1948). See also, *In re Olcott,* 141 *N. J. Eq.* 8 (Ch. 1947). Where marriage without parental consent of a 16-year-old constituted the factual basis for emancipation.

Similarly, a minor's enlistment in military service gives rise to a new relationship which is inconsistent with parental control resulting in emancipation. *Slep v. Slep,* 43 *N. J. Super.* 538 (Ch. Div. 1957).

In his treatise, *The Law of Domestic Relations in the United States* (1968), Professor Homer H. Clark discusses emancipation at § 8.3 as follows:

How * * * should we define the circumstances in which some or all of the child's disabilities terminate? The answer in general terms is clear: A particular disability should no longer exist whenever the child's circumstances have so changed that the reason for creating the disability no longer exists.

It is clear in this matter that the circumstances in Debra's life have changed. She has lived separate and apart from her mother since age 14. She is now 17. Her own child is two years of age, and the interests of that child must be taken into account by this court. Thus, the reasons for enforcing the disabilities of a minor, to award custody and therefore care and supervision to defendant, no longer exist. Her total involvement in her present foster family environment are clearly facts which are inconsistent with parental control and rebut the presumption against emancipation. *Schumm v. Schumm, supra.*

For the reasons expressed herein, Debra shall be adjudicated an emancipated minor free to select the environment and residence in which she and her own child shall reside.