**Rieta (McVey) PORATH,
Petitioner–Appellant,**

v.

**Kim McVEY, Respondent–Respondent.**

No. 19151.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 26, 1994.

Donna K. Skouby, Div. of Child Support Enforcement, Joplin, for petitioner-appellant.

Robert E. George, Aurora, for respondent-respondent.

GARRISON, Presiding Judge.

This is an appeal from a judgment modifying a child support award. In the dissolution decree entered on September 8, 1983, Appellant (mother) was granted custody of two minor children, Jeremy and Jaimie, and Respondent (father) was ordered to pay child support of $90 per month per child. On January 25, 1993, Appellant filed a motion to modify in which she sought increased child support. Respondent filed a counter-motion in which he sought custody of Jaimie and an order declaring that Jeremy was emancipated because of his anticipated enrollment in the United States Military Academy at West Point (West Point). When the motions were heard on September 9, 1993, Jeremy was attending West Point as a first year cadet.

The trial court granted Appellant's motion in part by increasing the child support from $90 per month to $220 per month for Jaimie. It found for Respondent, however, on the issue of emancipation and terminated his obligation to pay child support for Jeremy. Appellant alleges that the trial court erred (1) in finding that Jeremy was emancipated, and (2) in failing to order that the increased child support for Jaimie be retroactive.

■ The scope of appellate review in such cases is governed by the familiar precepts of *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). As a result, we must affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Sparks v. Trantham*, 814 S.W.2d 621, 624 (Mo.App.S.D.1991). As the trier of fact, the trial court resolves conflicts in the evidence and can draw all reasonable inferences from the evidence presented to it. *Id.*

In her first point, Appellant contests the trial court's finding that Jeremy was emancipated by reason of his attendance at West Point. The issue arose in Respondent's counter-motion to modify in which he alleged that Jeremy was emancipated because, as a cadet at West Point, he would be "a full-time member of the Armed Services" and his medical expenses and necessities would be provided by the academy. Appellant admitted those allegations in her Answer to the counter-motion except she denied that his necessities would be provided by West Point or that he was emancipated. The evidence consisted of the testimony of Appellant and Respondent as well as documentary evidence concerning West Point, including its catalog.

■ Emancipation is never presumed and the burden of proving it is on the party asserting that it has occurred. *Sutton v. Schwartz*, 860 S.W.2d 833, 835 (Mo.App.E.D. 1993); *Bopp v. Bopp*, 671 S.W.2d 348, 351 (Mo.App.E.D.1984). On appeal, we view the evidence in a manner favorable to the decree and disregard contradictory evidence. *Zalmanoff v. Zalmanoff*, 862 S.W.2d 941, 944 (Mo.App.E.D.1993). Where, as in the instant case, the parties do not request and the trial court does not make findings of fact or conclusions of law, all fact issues are considered

to have been determined in accordance with the result reached. Rule 73.01(a)(3);[1] *Meredith v. Brackett,* 856 S.W.2d 103, 107 (Mo. App.S.D.1993).

Section 452.340.3[2] establishes the circumstances under which child support shall be terminated. It provides, in pertinent part:

3. Unless the circumstances of the child manifestly dictate otherwise and the court specifically so provides, the obligation of a parent to make child support payments shall terminate when the child:

. . . .

(3) Enters active duty in the military;

(4) Becomes self-supporting, provided that the custodial parent has relinquished the child from parental control by express or implied consent; or

(5) Reaches age eighteen, unless the provisions of subsection 4 or 5 of this section apply.

. . . .

5. . . . If the child is enrolled in an institution of vocational or higher education not later than October first following graduation from a secondary school and so long as the child continues to attend such institution of vocational or higher education, the parental support obligation shall continue until the child completes his education, or until the child reaches the age of twenty-two, whichever first occurs. . . . If the child is enrolled in such an institution, the child or obligated parent may petition the court to amend the order to direct the obligated parent to make the payments directly to the child. As used in this section, . . . "[h]igher education" means any junior college, college, or university at which the child attends classes regularly.

Although Jeremy was 18 years of age when the motions were heard, it is not disputed that West Point is an institution of higher education in which he was enrolled prior to October first following his graduation from high school. Appellant defines the dispute as being whether Jeremy's attendance at West Point constitutes "active duty in the military" pursuant to § 452.340.3(3). She contends that West Point is a highly selective college providing a B.S. degree and is merely preparation for active duty in the military.

The concept of emancipation in Missouri has been defined as the "freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." *Sparks v. Trantham,* 814 S.W.2d at 624 (citing *In re Marriage of Hughes,* 773 S.W.2d 897, 899 (Mo. App.1989)). In *Sutton v. Schwartz,* 860 S.W.2d at 835, the court said that whether lifestyle changes amount to emancipation "must be viewed from the standpoint of whether it has effectively, by its very nature, terminated parental control."

Prior to enactment of § 452.340.3(3), Missouri courts recognized that one of the ways in which emancipation may occur is by entry into the military. *Id.* This was on the theory that such service gives rise to a new relation inconsistent with the control and care of a parent; the child puts himself under the control of the government; and the enlistment amounts to a contract between the minor and the government which involves a change in his status, which cannot be thrown off by him at his will. *Swenson v. Swenson,* 227 S.W.2d 103, 105 (Mo.App.W.D. 1950). Other cases recognized emancipation by military service on the theory that the minor is brought under the exclusive control of and receives full support from the government. *Green v. Green,* 234 S.W.2d 350, 351–352 (Mo.App.E.D.1950). *See also French v. French,* 599 S.W.2d 40, 41 (Mo.App.E.D. 1980). In *Orth v. Orth,* 637 S.W.2d 201, 205 (Mo.App.E.D.1982), the court described military service as having a "status, or position, inconsistent with remaining subject to parental control."

Whether attendance at West Point has the effect of terminating the obligation to make child support payments pursuant to

---

1. All references to rules are to Missouri Rules of Court, V.A.M.R.

2. All references to statutes are to RSMo 1986, V.A.M.S., unless otherwise indicated.

§ 452.340 requires interpretation of that statute. In interpreting a statute, the primary object is to ascertain the intent of the legislature from the language used and give effect to that intent, considering the words used in their plain and ordinary meaning. *Bollinger v. Bollinger,* 778 S.W.2d 15, 18 (Mo.App.S.D. 1989). The statute in question has been described as incorporating case law pronouncements concerning emancipation of minors. *Sparks v. Trantham,* 814 S.W.2d at 624.

The meaning of "active duty in the military" is not defined in Missouri statutes. "Active duty" is defined in *Webster's Third New International Dictionary* 22 (1976) as "full-time service in the armed forces with regular duties and pay and subject to the Uniform Code of Military Justice and appropriate regulations."

10 U.S.C. § 101(d)(1) defines "active duty" as:

> ... full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned.

10 U.S.C. § 3075 provides that "cadets of the United States Military Academy" are part of the Regular Army which "is the component of the Army that consists of persons whose continuous service on active duty in both peace and war is contemplated by law." *See also State ex rel. Griffith v. Davis,* 114 Kan. 270, 217 P. 905, 908 (1923). *Bandy v. Mickelson,* 73 S.D. 485, 44 N.W.2d 341, 343 (1950), held that cadets are in the military service. 10 U.S.C. § 4349 also provides, in pertinent part:

> (a) The Corps of Cadets shall be divided into companies, as directed by the Superintendent, for the purpose of military instruction. Each company shall be commanded by a commissioned officer of the Army.
>
> (b) A cadet shall perform duties at such places and of such type as the President may direct.
>
> ....

> (e) The Corps of Cadets shall be trained in the duties of members of the Army, shall be encamped at least three months in each year, and shall be trained in all duties incident to a camp.

The evidence in the instant case indicates that cadets at the Academy receive room, board, tuition, and medical care from the government. In addition, they are paid $6500 per year, all of which is retained for the expense of a personal computer, uniforms, textbooks and activity fees, except for $75 per month, which is available to the cadet for personal use.

Persons entering West Point first complete a six-week Cadet Basic Training Program designed to teach them to be both soldiers and cadets. During the summer between the first and second years, the cadets must undergo eight weeks of military field training. Other military training is required each summer prior to graduation. A cadet's time at the Academy is very structured and free time is limited. For instance, a first year cadet is entitled to only two weekend passes but is permitted to leave for Christmas and Thanksgiving holidays. Additionally, the daily schedule provides for specific times for meals beginning at 6:30 A.M., daily cadet duties, taps at 11:30 P.M., and lights out at 12:00.

Cadets are required to sign an Oath of Allegiance by which they agree to obey the Uniform Code of Military Justice. They also sign an Agreement to Serve by which they agree "[t]o complete the course of instruction at the United States Military Academy" and to accept an appointment as a commissioned officer and serve on active duty for not less than six consecutive years immediately after such appointment. The West Point catalog states that the mission of the academy is "to educate and train the Corps of Cadets so that each graduate shall have the attributes essential to professional growth as an officer of the Regular Army, and to inspire each to a lifetime of service to the Nation." The graduate, however, in addition to obtaining military training, receives an education in the arts and sciences and a Bachelor of Science degree. Cadets who enter from civilian sta-

tus and who resign or are separated from the Academy prior to the third year apparently have no other active service obligation.

Other courts have considered whether attendance at a military service academy constituted "emancipation." In *Zuckerman v. Zuckerman,* 154 A.D.2d 666, 546 N.Y.S.2d 666 (N.Y.1989), the court held that a cadet at West Point was emancipated. It said:

> In the instant case, it is clear that the parties' minor son became emancipated upon entering West Point. [Citation omitted.] He is considered a member of the regular army (*see,* 10 U.S.C. § 3075[b][2] ), and subject to extensive governmental control, which is inconsistent with a parent's control and support of a child. Furthermore, he attends West Point tuition free and is provided with room, board, health care, and monthly pay of $504.30, plus other allowances. Thus, he is self-supporting and financially independent of his parents.

*Id.* 546 N.Y.S.2d at 668.

The Supreme Court of New Hampshire reached the same result in *Dingley v. Dingley,* 121 N.H. 670, 433 A.2d 1281 (1981). In rejecting the mother's contention that her son was not in active military service by attending the Air Force Academy, the court referred to the general rule that a child joining the military places himself under the control of the government and enters into a new relationship inconsistent with the parents' control and support of the child. *Id.* 433 A.2d at 1282. It relied on the fact that pursuant to federal statute a cadet at the Air Force Academy is a member of the "Regular Air Force"; courts have held that cadets and midshipmen at the Military and Naval Academies are members of and serving in the Army and Navy; cadets are trained in the duties of members of the Air Force and are required to perform duties at such places and of such type as the President may direct; many aspects of a cadet's daily life are subject to governmental regulation and supervision; and the government provides for practically all of the cadet's material needs. The court reasoned:

> Thus, it is clear that, insofar as their legal status is concerned, federal law regards cadets and midshipmen at the Air Force, Military, and Naval Academies as being as much a part of the armed forces as commissioned officers already assigned to permanent duty stations.
>
> Furthermore, the obligations to the government that a cadet undertakes and the governmental control to which he subjects himself when he enters the Air Force Academy are fully consistent with emancipated status.

*Id.* 433 A.2d at 1283. See, however, *Howard v. Howard,* 80 Ohio App.3d 832, 610 N.E.2d 1152 (Ohio App. 12 Dist.1992), where the court likened attendance at the Coast Guard Academy to attending college on a full scholarship and held that no emancipation occurred.

In the instant case Appellant has admitted that Jeremy is a full-time member of the Armed Services and the evidence demonstrated that he is actively engaged in a military endeavor, albeit he is also receiving an education. His life at West Point is largely controlled by the government, which also provides for the bulk of his material needs. Federal law establishes that he is part of the Regular Army and he is subject to performing duties as directed by the President. Additionally, he has taken an oath to abide by the Uniform Code of Military Justice and is subject to an agreement to complete the instruction at the Academy and provide six years of additional service as an officer. In summary, Jeremy's status is inconsistent with remaining subject to parental control. We conclude, therefore, that under these facts, entry into the Military Academy warranted a judgment terminating child support pursuant to the legislative intent expressed in § 452.340.3 and accordingly deny Appellant's first point.

In her second point, Appellant contends that the trial court abused its discretion in failing to make the increased child support award for Jaimie retroactive to either the date of filing of the motion or to the date of its service. In her motion, she requested that any order of increased child support be made retroactive to the date of filing of the motion. Section 452.370.6 provides that the

date of personal service is the appropriate date for any retroactive award.

Appellant appropriately points out that retroactivity of modified child support awards have been approved in Missouri. She cites *Wexelman v. Donnelly,* 782 S.W.2d 72 (Mo.App.E.D.1989), which affirmed a retroactive modification of child support and stated that such determination is in the discretion of the circuit court. *See also: Schaffer v. Haynes,* 847 S.W.2d 814, 819 (Mo.App. E.D.1992); *Reif v. Reif,* 750 S.W.2d 521 (Mo. App.E.D.1988).

■ The trial court's determination of the effective date for a modified child support award will not be reversed in the absence of a clear abuse of discretion. *Anderson v. Anderson,* 861 S.W.2d 796, 802 (Mo.App.S.D. 1993). An abuse of discretion occurs when a trial court's ruling is clearly against the logic of the circumstances then before it and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Connelly v. Schafer,* 837 S.W.2d 344, 350 (Mo.App.W.D.1992). In making its decision concerning retroactivity of such an award, the court should consider all factors relevant to the issue and balance the equities as called for by the facts and circumstances of that particular case. *Wexelman v. Donnelly,* 782 S.W.2d at 76 (citing *Stitt v. Stitt,* 617 S.W.2d 645, 648 (Mo.App. 1981)).

■ Appellant argues that the trial court abused its discretion in the instant case by not considering and balancing the equities and by not giving the matter careful consideration. She particularly points to a statement made by the trial court during closing argument when it stated: "Forget about the retroactivity. However, if I did that, I'd put him $5,000 in the hole." Appellant argues that since Respondent's net additional obligation was only $40 per month over that which he had been paying previously ($220 under the new award for Jaimie versus $180 previously for both children), retroactivity would have amounted to only $360 if applied to the date of filing of the motion or $280 if applied to the date of service.

The court's comment, however, was made at the conclusion of the hearing and apparently before any decision had been made concerning the merits. It had before it Appellant's Form 14 which showed a presumed child support amount of $339 per month per child. If the trial court had concluded that Jeremy was not emancipated, had awarded the child support shown on Appellant's Form 14, and had made the award retroactive, the arrearage would have been a substantial amount. We are unable to conclude that the statement made by the trial court, apparently without making mathematical calculations, indicates such a disregard for the equities of the case as to amount to an abuse of discretion requiring reversal.

Appellant also argues that retroactivity of the award was required because the hearing on the motion was continued several times at the request of Respondent's attorney. In this regard, we note that the motion was filed on January 25, 1993, and was originally set for hearing on April 26. The legal file indicates that Respondent's attorney was notified of that trial setting in a letter dated April 13. The April 26 setting was continued at the request of Respondent's attorney because of a scheduling conflict, and the case was ultimately rescheduled for September 9, 1993, apparently as the result of a conference between counsel. The record before us indicates that only one continuance was granted to Respondent's attorney. In any event, the case was tried in less than nine months after it was filed and the court entered judgment on October 19, 1993. Under the facts and circumstances of this case, we do not view this delay as requiring retroactivity of the increased child support award. Certainly, we cannot say that it was so arbitrary or unreasonable as to shock the sense of justice or indicate a lack of careful consideration by the trial court. This point is, therefore, denied.

The judgment is affirmed.

PREWITT and CROW, JJ., concur.