287 N.J. Super. 593 (1995)
671 A.2d 644
CARLENE BISHOP, PLAINTIFF,
v.
ROBERT BISHOP, DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part Passaic County.
Decided July 28, 1995.
*595 Robert P. Donovan, for plaintiff.
James M. Cerra, for defendant.
DeLUCCIA, J.S.C.
The issue in this case is whether a 20-year old cadet enrolled at the United States Military Academy at West Point (West Point) should be declared emancipated, thus relieving his divorced father from any obligation to provide his former spouse with child support. This question does not appear to have been previously considered in any reported decision in this jurisdiction. What hereinafter follows is the court's written supplementation of its oral decision rendered from the bench on July 28, 1995.
The matter is before the court by way of plaintiff's post-judgment motion which seeks enforcement of a certain interspousal agreement entered into at the time of the divorce. Plaintiff requests an increase in child support as well as establishment of support arrears. Other issues not germane to this question were also presented for the court's consideration. They were separately addressed in the court's oral decision, and are not included in this opinion.
The present controversy evolved as follows: The parties were divorced by judgment entered January 7, 1988. The judgment incorporated the terms of a "verbal property settlement and support agreement" which had been placed upon the record on an *596 earlier date. The agreement purportedly resolved the custody and economic issues in the dissolution of their marriage.
The agreement provided that the parties were to share "joint legal custody" of their three children with physical custody reposing with plaintiff. Defendant was obligated to pay child support in the sum of $600 per month. The support payments were allocated $200 per month per child. The agreement also required that "... the payment of support for each child ... continue until such time as each child is emancipated." The parties failed to define "emancipation" in their agreement. The agreement also stipulated that the parties were to "... share expenses for the attendance at college by the children on a basis consistent with the respective financial abilities to pay at the time a particular child attends college." The agreement did not recite a formula or method for the determination of that obligation. However, the parties were to confer in respect of the selection of any post-secondary educational opportunity for the children.
Sometime prior to this motion, defendant reduced his support payments from $600 to $400. This action was apparently the consequence of the emancipation of the parties' eldest child. This reduction has not been contested by plaintiff. However, when the parties' second child entered West Point in August 1993, defendant again unilaterally reduced his monthly child support obligation by an additional $200. Plaintiff now resists defendant's action.
Plaintiff contends that notwithstanding her son's status as a cadet at West Point, she continues to provide him with significant financial support, and therefore, is entitled to have defendant's support obligation continue, if not increased. Plaintiff argues that their son should be treated in the same fashion as any other unemancipated child attending college. She claims that she continues to maintain the former marital home in part to accommodate her son's seven to nine weekend visits per semester. Additionally, her son returns home for approximately one month *597 during the summer. Plaintiff maintains that during such visits she incurs additional expenses for food and transportation.
Defendant argues that his son's status at West Point is not analogous to the typical college student. He maintains that federal law considers cadets at West Point as members of the United States Army on active duty. He further notes that not only does his son receive his education without parental contribution, but all of his other expenses including room and board are paid by the military. In addition, he receives a stipend of $100.00 per month. He notes that traditionally, minors who enter the military are deemed emancipated.
The parties submitted certifications and affidavits in support of their respective positions. Upon review, the court has concluded that there are no material facts which are genuinely controverted. Consequently, the motion will be addressed without the benefit of a plenary hearing. Shaw v. Shaw, 138 N.J. Super. 436, 440, 351 A.2d 374 (App.Div. 1976).[1]
It is firmly established that there is no specific age at which the emancipation of a child occurs. The issue is fact sensitive and requires a critical evaluation of then prevailing circumstances as they are presented in each case. Newburgh v. Arrigo, 88 N.J. 529, 543, 443 A.2d 1031 (1982). Generally, a rebuttable presumption against emancipation exists prior to the attainment of the age of majority which is eighteen. Reaching age eighteen establishes prima facie, but not conclusive proof of emancipation. Ibid.
*598 The reported decisions in this jurisdiction hold that the emancipation of a child occurs when the fundamental dependent relationship between parent and child is terminated. When a child moves beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status on his or her own, generally he or she will be deemed emancipated. Thus emancipation has been recognized upon a child's marriage, Leith v. Horgan, 24 N.J. Super. 516, 518, 95 A.2d 15 (App.Div. 1953); induction into the military service, Slep v. Slep, 43 N.J. Super. 538, 543, 129 A.2d 317 (Ch.Div. 1957), or by the entry of a court order based upon a determination as to the child's best interest, N.J. Div. of Youth & Family Serv. v. V, 154 N.J. Super. 531, 536-537, 381 A.2d 1241 (J. & D.R.Ct. 1977).
In Newburgh, supra, the Supreme Court recognized that, "... in appropriate circumstances, the privilege of parenthood carries with it the duty to assure a necessary education for children." Id. at 543, 443 A.2d 1031. Consonant with that principle, our courts have required divorced parents to contribute towards a child's post-secondary education, Khalaf v. Khalaf, 58 N.J. 63, 71-72, 275 A.2d 132 (1971); required supporting spouses to continue support payments while a child was enrolled in a full time undergraduate program, Limpert v. Limpert, 119 N.J. Super. 438, 442-443, 292 A.2d 38 (App.Div. 1972); and have even required the continuation of support payments for a twenty-three year old child pursuing a post-graduate law degree, Ross v. Ross, 167 N.J. Super. 441, 444-446, 400 A.2d 1233 (Ch.Div. 1979). An examination of the facts in these cases reveals that the children continued to maintain a dependent relationship with the custodial parent notwithstanding their chronological age. Accordingly, the parental support obligations continued.
The issue in the present case must be examined by the same standards. Thus, it is not Cadet Bishop's age that is dispositive, rather it is his status as a West Point cadet and how, if at all, that status affects his dependency upon his parents. Although New Jersey courts have yet to report any decisions on this *599 issue, other states have addressed this question. In Porath v. McVey, 884 S.W.2d 692 (Mo. App.S.D. 1994), the Missouri Court of Appeals concluded that an eighteen year old West Point cadet was emancipated, as a consequence of which his father's child support obligation was terminated. Although the decision in Porath in part relied upon a specific Missouri statute which legislatively terminated child support obligations when a child entered "active duty in the military", that court's analysis of this issue is nonetheless here pertinent. The Missouri court was required to determine whether the child's attendance at West Point constituted "active duty in the military" as that term was employed in the Missouri statute authorizing termination of child support payments. The parties in Porath framed the issues in a similar fashion as have the parties here. The Missouri Court of Appeals analyzed the issue in view of whether the lifestyle changes imposed upon a cadet by West Point had by their very nature terminated parental control and responsibility.
Although the Missouri statute did not define the meaning of "active duty in the military", the court resorted to review of the United States Code to determine whether a West Point cadet obtained that status. The court found that:
10 U.S.C. § 101(d) 1 defines active duty as "... full time duty in the active military service of the United States. Such term includes full time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned."

[(emphasis added) Id. at 695.]
Furthermore, by virtue of 10 U.S.C. § 3075 West Point cadets are deemed part of the Regular Army, which is the component of the Army that consists of persons whose continuous service on active duty in both peace and war is contemplated by law. Ibid.
The Missouri court also observed that 10 U.S.C. § 4349 divided the Corps of Cadets into companies with each company being commanded by a commissioned officer of the Army; required a cadet to perform duties at such places and of such type as the President may direct; and required the Corps of Cadets to be *600 trained in the duties of members of the Army with yearly encampments. Ibid.
The court determined that West Point cadets receive room, board, tuition and medical care from the military and are paid $6500 a year all of which is retained for the expenses of a personal computer, uniforms, textbooks and activity fees except for $75 (now $100) per month which is available to the cadet for personal use. Ibid.
The court observed that plebes entering the academy must complete a six-week cadet basic training program, designed to teach them to be both soldiers and cadets. Between the first and second years at the Academy, cadets are required to undergo eight weeks of military field training. Ibid. Most significantly, the court also found that a West Point cadet's time is rigidly structured and free time is minimal. For example, first year cadets are entitled to only two weekend passes and leave at Christmas and Thanksgiving. The daily schedule for cadets provides for specific times for meals with the cadet's day commencing at 6:30 a.m., taps at 11:30 p.m. and lights out at 12:00. Ibid.
The court also cited other evidence which would distinguish the status of a West Point cadets from students attending non-military educational institutions. For example, cadets are required to sign an oath of allegiance by which they agree to obey the Uniform Code of Military Justice. They also sign an Agreement to Serve wherein they agree to complete the course of instruction at West Point and to thereafter accept an appointment as a commissioned officer and serve on active duty for not less than six consecutive years subsequent to such appointment. Ibid. However, cadets who enter the academy as civilians and who subsequently resign or are separated from the academy prior to their third year do not have any other active service obligation. Ibid.
Based upon the significant degree of control over a West Point cadet by the government, coupled with the fact that a cadet is a full time member of the Army, and actively pursuing a military endeavor, the Missouri Court of Appeals concluded that a West *601 Point cadet's "... status is inconsistent with remaining subject to parental control." Id. at 696. Consequently, attendance at West Point qualified a cadet as being in the "active duty of the military" so as to terminate child support obligations under Missouri law. Ibid.
A similar conclusion was reached by the Appellate Division of the New York Supreme Court in Zuckerman v. Zuckerman, 154 A.D.2d 666, 546 N.Y.S.2d 666 (2 Dept. 1989). The court also reasoned that since a West Point cadet is a member of the Regular Army, subject to extensive governmental control which is inconsistent with a parent's control and support of a child, and is provided with free tuition, room, board, health care and monthly pay, the cadet was therefore self-supporting and financially independent of his parents. Id. 546 N.Y.S.2d at 668. Significantly, the Zuckerman court arrived at its conclusion in the absence of any analogous legislation as existed in Porath. The New York court reached its determination based upon New York case law which defines emancipation as "the renunciation of legal duties by a parent and the surrender of parental rights to a child." (Citations omitted) Id. 546 N.Y.S.2d at 667. This definition is consistent with the concept adopted in New Jersey. See Newburgh v. Arrigo, supra, 88 N.J. at 543, 443 A.2d 1031.
In Dingley v. Dingley, 121 N.H. 670, 433 A.2d 1281 (1991) the New Hampshire Supreme Court determined that a cadet at the United States Air Force Academy was deemed emancipated within the context of a divorce decree which terminated a father's support obligation upon the "emancipation" of his children. In reaching its conclusion, the New Hampshire Supreme Court adopted the same rationale as did the courts in Porath and Zuckerman. The court stated:
"[t]he general rule is that a child becomes emancipated when he enters the military, at least for the period of his military service." (Citations omitted.) The rationale underlying this rule is that "a minor who joins the armed forces places himself under the control of the government and enters into a new relationship that is inconsistent with the parent's control and support of the child." (Citations omitted) Id. 433 A.2d at 1282.
*602 The New Hampshire Supreme Court specifically rejected the custodial parent's argument that her son was merely a student at the Air Force Academy and not unlike any other college student attending school away from home on a scholarship. The court observed that military academies are quite different from non-military schools, particularly in respect of a cadet's daily life activities which are subject to governmental regulation and supervision. Id. 433 A.2d at 1283.
This court's research reveals that this issue has not been uniformly treated in all jurisdictions. For example, in Koon v. Koon, 50 Wash.2d 577, 313 P.2d 369 (1957) the Washington Supreme Court declined to emancipate a minor child who had resided with and was supported by his mother during his entire two-year period of military service. In order to accommodate her son, the mother rented a larger apartment at an additional expense. The court continued his divorced father's obligations for support payments.
In Omohundro v. Omohundro, 8 Ohio App.3d 318, 457 N.E.2d 324 (1982), the Ohio Court of Appeals concluded that a child who entered the United States Army Reserve for the purposes of attending a drug rehabilitation program and to finish high school, continued to be dependant upon his custodial parent and therefore was not emancipated. The court found that the minor's absence from his mother's home for the purpose of basic training was "temporary," and that upon his return home, she continued to support him. The court held that temporary support from another source followed by a resumption of parental support does not necessarily constitute emancipation unless there is an accompanying renouncement of parental rights. Id. at 320-21, 457 N.E.2d at 326.
In Backstatter v. Backstatter, 66 Misc.2d 331, 320 N.Y.S.2d 613 (1971) the New York Supreme Court declined to emancipate a minor child who entered the United States Merchant Marine Academy at Kings Point. The court found that although enrollment at the Merchant Marine Academy was the equivalent of *603 enlistment in the Armed Forces, under the particular circumstances of that case, it did not serve to break his ties with his family. The court determined that the cadet's residence was still his mother's home, which home he intended to return to and remain at after completion of his course study at Kings Point.
In Backstatter, the court reached its conclusions based upon the language in the parties separation agreement. The court found that the agreement did not contemplate the circumstance of admission into Kings Point. The agreement provided that support would continue until either the child died, reached 21 years of age, became self-supporting, married or permanently changed his residence to one other than his mother's. The court found that under the specific facts of that case, there was no change in the son's permanent residence while he was attending Kings Point. The court also ruled that the child was not self-supporting. This conclusion was apparently based on his economic circumstances at Kings Point, and the fact that the child's mother provided food and shelter when he was on leave. Id. 320 N.Y.S.2d at 616.
This court finds these authorities to be factually distinguishable from the present case. Furthermore, to the extent that any of these cases may be read to support a contrary conclusion, this court finds the reasoning employed and the results obtained in Porath, Dingley and Zuckerman to be more persuasive.
In the present case, the court is satisfied that Cadet Bishop is in the active duty of the United States Army by virtue of his appointment to West Point. See Minnich v. World War II Service Compensation Bd., 244 Iowa 715, 57 N.W.2d 803 (1953). While it is true that he is pursuing an education in the Arts and Sciences and, upon graduation, will receive a Bachelor of Science degree, those are perhaps two of the very few circumstances he shares in common with his contemporaries attending non-military colleges. The government provides for all of his educational needs and virtually all of his material requirements, in exchange for which he has abdicated his independence to the government. His primary allegiance is no longer to his custodial parent, but rather *604 to the President of the United States who serves as Commander in Chief of the military. It is the Army, in the form of the authorities at West Point, which determines when he will awake, eat and retire for the day. This regimen stands in stark contrast to collegiate life at non-military colleges and universities.
Plaintiff's claim that she maintains her home to accommodate her son's periodic visits does not alter his status. In the first instance, the seven to nine visits per semester he makes appear to be more a function of the proximity of plaintiff's residence in Wayne, N.J. to West Point, N.Y., rather than an index of his continued dependency. This court is convinced that if he was in attendance at the Air Force Academy rather than West Point, the number of per semester visits would be significantly reduced.
Furthermore, home visits by members of the Armed Forces while on leave is not uncommon. However, such sojourns are temporary and generally do not alter their emancipated status. See Dingley v. Dingley, supra, 433 A.2d at 1283. Accordingly, for the foregoing reasons, the court finds that upon his appointment to and enrollment in West Point as a cadet, plaintiff relinquished any remaining control and responsibility over her son. He is therefore deemed emancipated. Consequentially defendant is relieved from his child support obligations for that child.
Although the judgment of divorce specifically allocated child support payments at $200 per month per child, the court concludes that the emancipation of Cadet Bishop should not result in an automatic reduction of support by that amount. "Although a court order or agreement of the parties may allocate separate amounts as alimony for the supported spouse and support for each child, these allocations are often arbitrary and may not accurately reflect the actual needs of the individual members of the family." Ohlhoff v. Ohlhoff, 246 N.J. Super. 1, 8, 586 A.2d 839 (1991). It has been seven-and-one-half years since defendant's support obligations were first established. The passage of time and the concomitant increases in the cost of living are sufficient to establish changed circumstances justifying a revision of an order or *605 agreement relating to child support. See Lepis v. Lepis, 83 N.J. 139, 151, 416 A.2d 45 (1980); see also Shaw v. Shaw, supra, 138 N.J. Super. at 441, 351 A.2d 374. Accordingly, the support for the party's unemancipated child shall be recalculated consistent with the Child Support Guidelines. See Rule 5:6A.
NOTES
[1] Unfortunately in a misguided effort to bolster their respective arguments, each party had their son submit a certification in support of their respective positions. Not only were the certifications singularly unhelpful, but they unnecessarily interjected this young man in the midst of a legal squabble between his parents. In the certification submitted in support of plaintiff's application, the son stated that he was "not emancipated." In the pleading submitted on behalf of defendant, he retracted that conclusion. Since the facts contained in his certifications were not seriously in dispute, his conclusions as to his status are superfluous. Embroiling this young man in the present controversy served no purpose other than to unnecessarily divide his loyalties between his parents.