TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00051-CR







Oscar Ruiz, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 26TH JUDICIAL DISTRICT


NO. 96-376-K26, HONORABLE BILLY RAY STUBBLEFIELD, JUDGE PRESIDING







 This appeal is taken from a conviction for aggravated assault. See Tex. Penal Code
Ann. § 22.02(a) (West 1994). After the jury found appellant, Oscar Ruiz, guilty, it also found
as alleged that appellant had been previously convicted of two felony offenses of aggravated
assault. The jury assessed punishment at 50 years' imprisonment. We will affirm the conviction.


Points of Error


 Appellant advances two points of error. First, he contends that the "evidence is
insufficient to show that appellant used his hand or feet or a crowbar or tire tool as a deadly
weapon during the commission of the offense." Second, appellant urges that the "trial court erred
by denying a motion for mistrial after prosecutor made improper jury arguments during the
punishment stage of the trial." 


The Indictment


 Appellant was charged with two different theories of misdemeanor assault. See
Tex. Penal Code Ann. § 22.01(a)(1), (2) (West 1994). (1) Both assaults were alleged in the one-count indictment to be felonious aggravated assaults by the use or exhibition of a deadly weapon,
namely a hand or feet or a crowbar or tire iron. See Tex. Penal Code Ann. § 22.02(a)(2) (West
1994). (2)


First Contention


 Appellant urges that the aggravating element of both theories of the offense, the use
or exhibition of a deadly weapon, was not proven beyond a reasonable doubt. It is clear that
appellant challenges the legal sufficiency of the evidence. The challenge is to an essential element
of the offense as distinguished from the affirmative finding of the use or exhibition of a deadly
weapon in connection with an associated offense. See Tex. Code Crim. Proc. Ann. art. 42.12,
§ 3g(a)(2), (b) (West Supp. 1998).


Facts


 Barbara Ortiz testified that she was a good friend of Arleen Ruiz, appellant's wife. 
About 8:00 p.m. on May 17, 1996, Ortiz met Arleen and appellant at the Gold Post Bar in Round
Rock. Shortly after she arrived, all three of them left the bar because of an apparent argument
between appellant and his wife, the nature of which was unclear to Ortiz because of the noise in
the bar. As they walked to their parked cars, appellant hit or knocked his wife to the ground and
began to kick her with his feet and hit her with his hands. Ortiz tried to push appellant away from
his wife and two men arrived to restrain appellant. Ortiz and Arleen Ruiz immediately went to
the front of the bar where Ortiz used the outside telephone to call 911 and summon the police. 
Ortiz observed appellant driving his car around the bar several times before he parked. He then
approached his wife with a crowbar in his hand and threatened to kill her. Arleen fled inside the
bar and was followed by appellant.

 Arleen Ruiz testified that she and appellant had separated but that he had stayed
with her the night before the alleged assault. They went to the Gold Post Bar together on May 17,
1996. They were to meet Ortiz there. Arleen explained that some "guys" came into the bar and
apparently appellant thought one of them knew Arleen. Appellant's mood changed and he became
upset. Jealousy had been a problem in their marriage. Shortly after Ortiz arrived, appellant was
ready to leave. As they walked to their car, appellant turned and slapped Arleen, knocking her
to the ground. He began hitting her with his hands and feet and kicking her in the body, on her
side and legs. Arleen described appellant as being very strong and engaged in construction work.

 Arleen described how two men and Ortiz were finally able to restrain appellant. 
She ran to the front of the bar where Ortiz called the police. Appellant then began driving around
the bar and kept asking Arleen to get in the car but she refused. Appellant parked his car and
came towards Arleen with "something" in his hand. He began yelling, "I'm going to kill you,
bitch." Arleen fled into the bar and tried to reach the back door. Several of her cousins were in
the bar and when appellant entered the room some four or five men struggled to wrestle appellant
to the floor. Thereafter, the police arrived and removed appellant. Arleen described her pain and
her injuries, including a scar on her leg where appellant kicked her with his work boots.

 The bartender, Richard Ontiveros, testified that Arleen came running into the bar
with appellant in full pursuit with a crowbar or tire tool raised above his head. Over the sound
of the music, appellant could be heard yelling, "I am going to kill you, bitch." He made this
threat three times before six men were able to take him to the floor. Ontiveros explained that
appellant was a very strong man and very upset. Ontiveros testified that appellant seemed capable,
with the crowbar, of causing death or serious bodily injury to Arleen. Ontiveros observed that
after the police arrived they had a difficult time in removing appellant from the bar.

 Round Rock Police Officer Jim Weber was the second officer on the scene after he
heard a report that a man with a crowbar was chasing his wife. Weber found appellant on the bar
floor struggling aggressively while five men held him down. Weber and Officer Thomason
struggled to properly handcuff appellant, but were only able to handcuff him in the front as he was
"very, very strong." Appellant continued to resist as they removed him from the bar. They were
unable to lay him over the back of a car because of appellant's strength and the aggressive use of
his feet. When other officers arrived, Weber went to obtain some flex-cuffs for appellant's feet,
but when he returned appellant had been sprayed with pepper spray and was calm. While
appellant struggled with the police, Ortiz heard him yell, "If I get out, I'm going to kill you,
Arleen." Officer Weber, trained in the use of force, testified that appellant was capable of causing
death or serious bodily injury to Arleen Ruiz with his hands or feet or a crowbar or tire iron.

 The trial court in its jury charge tracked the indictment and in its application
paragraph submitted both theories of assault and required that the jury find that appellant used a
deadly weapon, a hand or feet or a crowbar or tire tool, before it could find appellant guilty of
aggravated assault. The jury returned a general verdict finding appellant guilty of aggravated
assault as alleged in the indictment and finding that a deadly weapon "namely, hands or feet or a
crowbar or a tire iron was used or exhibited" during the commission of the offense. When
different theories of the offense are submitted to the jury in the disjunctive, a general verdict is
sufficient if the evidence supports one of the theories. See Fuller v. State, 827 S.W.2d 919, 931
(Tex. Crim. App. 1992), cert. denied, 509 U.S. 922 (1993); Kitchens v. State, 823 S.W.2d 256,
257-58 (Tex. Crim. App. 1991), cert. denied, 504 U.S. 958 (1992). The same reasoning would
apply to the submission in the disjunctive of the nature of the deadly weapon used or exhibited
during the commission of the offense.




Legal Sufficiency


 In determining whether the evidence is legally sufficient to support the judgment,
we view the evidence in the light most favorable to the verdict, asking whether any rational trier
of fact could have found beyond a reasonable doubt all the essential elements of the offense. See
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim.
App. 1996); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin 1994, pet. ref'd).

 The evidence, viewed in this light, and all reasonable inferences drawn therefrom
are evaluated in this review. See Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App.
1995). A reviewing court must evaluate all evidence, rightly or wrongly admitted, which the trier
of fact was permitted to consider. See Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App.
1997); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Beltran v. State, 728
S.W.2d 382, 389 (Tex. Crim. App. 1987). The standard for review is the same for both direct
and circumstantial evidence cases. See Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App.
1992). Appellate courts measure the legal sufficiency of the evidence against a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In
analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign,
disregard, or weigh the evidence. Rodrigues v. State, 939 S.W.2d 211, 218 (Tex. App.--Austin
1997, no pet.). The jury as the trier of fact is the sole judge of the credibility of the witnesses and
the weight to be given the testimony. It may accept or reject all or any part of any witness's
testimony. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Williams v. State,
692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Reconciliation of evidentiary conflicts is solely
the function of the trier of fact. See Miranda v. State, 813 S.W.2d 724, 733-34 (Tex. App.--San
Antonio 1991, pet. ref'd); Juarez v State, 796 S.W.2d 523, 524 (Tex. App.--San Antonio 1990,
pet. ref'd).

 One of the theories of aggravated assault submitted to the jury in the court's charge
was that appellant intentionally or knowingly threatened Arleen Ruiz with imminent bodily injury
and that this assault was aggravated by the use or exhibition of a deadly weapon, namely a hand,
or feet, or a crowbar or a tire iron.

 A "deadly weapon" means "(A) a firearm or anything manifestly designed, made,
or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the
manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Penal
Code Ann. § 1.07(a)(17)(A)(B) (West 1994). Serious bodily injury is bodily injury that creates
a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss
or impairment of the function of any bodily member or organ. See Tex. Penal Code Ann.
§ 1,07(a)(46) (West 1994).

 Neither a crowbar nor a tire iron is designed, made, or adapted for the purpose of
inflicting death or serious bodily injury. However, items not deadly weapons per se under section
1.07(a)(17)(A), have been found to be deadly weapons by the nature of their use or intended use
under section 1.07(a)(17)(B). See Hill v. State, 913 S.W.2d 581, 582 (Tex. Crim. App. 1996);
Thomas v. State, 821 S.W.2d 616, 619 (Tex. Crim. App. 1991). In Hester v. State, 909 S.W.2d
174, 179 (Tex. App.--Dallas 1995, no pet.), a screwdriver was held not to be a deadly weapon
per se but a deadly weapon nonetheless because of proof of the manner of its use or intended use
showing that it was capable of causing death or serious bodily injury. See also Quintana v. State,
777 S.W.2d 474 (Tex. App.--Corpus Christi 1989, pet. ref'd) (metal dustpan).

 We examine each case on its own facts to determine whether a rational trier of fact
could have concluded from the surrounding circumstances that an instrument was used or exhibited
as a deadly weapon. See Hester, 909 S.W.2d at 179; Brown v. State, 716 S.W.2d 939, 947 (Tex.
Crim. App. 1986); English v. State, 647 S.W.2d 667, 669 (Tex. Crim. App. 1983). A
defendant's verbal threats, the distance between the defendant and the victim, the size and shape
of the instrument, a description of the instrument, the manner of its use or intended use, and its
capacity to produce death or serious bodily injury may be considered in determining whether a
particular item was a deadly weapon. Brown, 716 S.W.2d at 946. It is not necessary that injuries
or wounds be inflicted on a person before an instrument can qualify as a deadly weapon. Id.; 
Denham v. State, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978); Limuel v. State, 568 S.W.2d
309, 311-12 (Tex. Crim. App. 1978). Moreover, the State need not introduce expert testimony
to establish that an instrument is a deadly weapon. Lockett v. State, 874 S.W.2d 810, 814 (Tex.
App.--Dallas 1994, pet. ref'd). Lay testimony is sufficient. Denham, 574 S.W.2d at 131. There
is no doubt, however, that expert testimony is particularly useful in supplementing meager
evidence. See Davidson v. State, 602 S.W.2d 272, 273 (Tex. Crim. App. 1980).

 Intent is a fact issue for the jury to resolve. See Robles v. State, 664 S.W.2d 91,
94 (Tex. Crim. App. 1984). Proof of a culpable mental state generally relies upon circumstantial
evidence. Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App. 1978). "Intent can be inferred
from the acts, words and conduct of the accused." Dues v. State, 634 S.W.2d 304, 305 (Tex.
Crim. App. 1982); Barcenes v. State, 940 S.W.2d 739, 744 (Tex. App.--San Antonio 1997, pet.
ref'd). Conduct before, during, and after an offense may also be considered in determining an
accused's culpability. See Barron v. State, 566 S.W.2d 929, 931 (Tex. Crim. App. 1978). A
threat may be shown by the action and conduct of the accused as well as by his words. See
McGowan v State, 664 S.W.2d 355, 357 (Tex. Crim. App. 1984).

 In the instant case, appellant, after the initial attack upon his wife, got out of his
car with "something" in his hands and yelled to her, "I'm going to kill you, bitch." She fled
inside the bar with appellant in pursuit. Other witnesses described appellant as being armed with
a crowbar which was held above his head as he chased his wife. Inside the bar, appellant yelled
and repeated his earlier threat three times. He got within three or four feet of his wife as she ran
around the pool table. He was subdued by five or six men. The crowbar was introduced into
evidence. The size and shape of the instrument was before the jury. Officer Weber, trained in
the use of force, stated that the crowbar was capable of causing death or serious bodily injury.

 Viewing the evidence in the light most favorable to the jury's verdict, we conclude
that any rational trier of fact could have found beyond a reasonable doubt that appellant
intentionally or knowingly threatened his wife with imminent bodily injury by threatening to kill
her and that the crowbar employed by appellant was, by the manner of its use and intended use,
a deadly weapon. The evidence was legally sufficient to support one of the theories of aggravated
assault submitted to the jury and it supports the general verdict returned. See Kitchens, 823
S.W.2d at 257-58.

 When there are alternate means of proving an offense, if sufficient evidence exists
on either of the alternatives, the sufficiency of the evidence is established. See Alvarado v. State,
912 S.W.2d 199, 225 (Tex. Crim. App. 1995); Gibbs v. State, 932 S.W.2d 256, 259 (Tex.
App.--Texarkana 1996, no pet.). We need not reach the question of whether the evidence was
sufficient to support the other theory of aggravated assault as alleged and as submitted to the jury. 
See Gibbs, 932 S.W.2d at 258-59.

 In the second point of error, appellant contends that the trial court erred in
overruling a motion for mistrial after improper prosecutorial jury argument at the penalty stage
of the trial. The error, if any, would entitle appellant to a new trial only on the issue of
punishment. See Tex. Code Crim. Proc. Ann. art. 44.29(b) (West Supp. 1998).

 At the penalty stage of the trial, appellant pleaded "not true" to the enhancement
of punishment paragraphs of the indictment. The State then established by proof the 1987 and
1989 convictions for aggravated assault as alleged. Appellant's criminal history was also shown
to include 1995 convictions for failure to identify, driving while license suspended, driving while
intoxicated, and assault. He was also shown to have been convicted in 1987 and 1988 for resisting
arrest.

 Barbara Ortiz testified that appellant had assaulted his wife a "lot of times." His
wife was the victim in the 1995 assault conviction. A probation officer testified that appellant had
a bad reputation for violence. Three law enforcement officers testified about being assaulted by 
appellant or of appellant fighting with officers after arrest. Rick Pena, a jailer, testified that
appellant fought while in jail, tore a telephone off of the wall, and was not a peaceful inmate. 
S. G. Bengston, a former Chief of Police at Taylor testified that he had known appellant for 23
years and that appellant had a bad reputation for being a peaceful and law-abiding citizen.

 During jury argument, appellant's counsel asked the jury to assess the minimum
punishment under the habitual criminal statute and deflated the importance of the other
convictions, making reference to the circumstances surrounding the offenses involved. In the
State's closing argument, the prosecutor stated, without objection, "We've got 23 years of history
of this defendant." Thereafter, the prosecutor reviewed the evidence and apparently in response
to the defense argument, discussed the circumstances of the prior offenses. He then mentioned
the law enforcement officers, court personnel, and prosecutors who over the years had been
involved in enforcing the law concerning appellant.

 The prosecutor added: 

 

We have the Williamson County citizens, finally. I'd like to know who the two
men were who came to Arleen Ruiz's help at the Gold Post Bar. They saved her
life. I'd like to know who the bar patrons inside who took it on their lives to judge
this man (sic) and try to hold him down. They saved her life. I'd like to know all
the people he has touched in 23 years. You could not fit them in this courtroom. 
We could fill every single seat.



 At this point, appellant objected to the reference to the "23 years" based on the lack
of evidence to support the reference. In response, the prosecutor referred to Chief Bengston's
testimony that he had known appellant for 23 years. Without obtaining a ruling on the earlier
objection, appellant again objected that the prosecutor's argument was "outside the record." The
objection was sustained and, at appellant's request, the jury was instructed to disregard the
prosecutor's argument. The motion for mistrial, however, was overruled. The prosecutor
apologized and continued his jury argument.

 Permissible jury argument is normally limited to four areas: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's
argument; and (4) pleas for law enforcement. See Lagrone v. State, 942 S.W.2d 602, 619 (Tex.
Crim. App.), cert. denied, 118 S. Ct. 305 (1997); Dinkins v. State, 894 S.W.2d 330, 357 (Tex.
Crim. App.), cert. denied, 516 U.S. 832 (1995). Generally, when a jury argument falls outside
these areas, error occurs. However, a jury instruction to disregard the argument generally cures
the error. Dinkins, 894 S.W.2d at 357; Cooks v. State, 884 S.W.2d 697, 727 (Tex. Crim. App.
1993). The State takes the position that the complained-of argument fell within all four areas of
proper jury argument. Be that as it may, we conclude that the jury instruction cured the error, if
any. See McGee v. State, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).

 Reversible error results from improper and objected-to (3) prosecutorial argument only
where the argument is extreme, manifestly improper, injects new and harmful facts into the case,
or violates a mandatory statutory provision, and is thus so inflammatory that its prejudicial effect
cannot reasonably be cured by a jury instruction to disregard. See Hernandez v. State, 819
S.W.2d 806, 820 (Tex. Crim. App.), cert. denied, 504 U.S. 974 (1991). The complained-of jury
argument in the instant case was of the nature that any error was cured by the jury instruction.

 Moreover, any nonconstitutional error that does not affect the substantial rights of
a party must be disregarded. Tex. R. App. P. 44.2(b). Examining the argument in light of the
whole record, the trial court's timely admonishment to disregard, and the prosecutor's apology,
we do not conclude appellant's substantial rights were affected. The trial court did not err in
overruling the motion for a mistrial. The second point of error is overruled.

 The judgment of conviction is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Aboussie, Jones and Onion*

Affirmed

Filed: September 17, 1998

Do Not Publish














* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. Section 22.01(a) provides in part:


(a) a person commits an offense if the person


(1) intentionally, knowingly or recklessly causes bodily injury to another, including
the person's spouse;


(2) intentionally or knowingly threatens another with imminent bodily injury,
including the person's spouse.
2. Section 22.02(a) provides:


(a) a person commits an offense if the person commits assault as defined in Section
22.01 and the person


 (1) causes serious bodily injury to another, including the person's spouse; 


 (2) uses or exhibits a deadly weapon during the commission of the assault.
3. See Cockrell v. State, 933 S.W.2d 73, 88-89 (Tex. Crim. App. 1996).



y was instructed to disregard the
prosecutor's argument. The motion for mistrial, however, was overruled. The prosecutor
apologized and continued his jury argument.

 Permissible jury argument is normally limited to four areas: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) responses to opposing counsel's
argument; and (4) pleas for law enforcement. See Lagrone v. State, 942 S.W.2d 602, 619 (Tex.
Crim. App.), cert. denied, 118 S. Ct. 305 (1997); Dinkins v. State, 894 S.W.2d 330, 357 (Tex.
Crim. App.), cert. denied, 516 U.S. 832 (1995). Generally, when a jury argument falls outside
these areas, error occurs. However, a jury instruction to disregard the argument generally cures
the error. Dinkins, 894 S.W.2d at 357; Cooks v. State, 884 S.W.2d 697, 727 (Tex. Crim. App.
1993). The State takes the position that the complained-of argument fell within all four areas of
proper jury argument. Be that as it may, we conclude that the jury instruction cured the error, if
any. See McGee v. State, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989).

 Reversible error results from improper and objected-to (3) prosecutorial argument only
where the argument is extreme, manifestly improper, injects new and harmful facts into the case,
or violates a mandatory statutory provision, and is thus so inflammatory that its prejudicial effect
cannot reasonably be cured by a jury instruction to disregard. See Hernandez v. State, 819
S.W.2d 806, 820 (Tex. Crim. App.), cert. denied, 504 U.S. 974 (1991). The complained-of jury
argument in the instant case was of the nature that any error was cured by the jury instruction.

 Moreover, any nonconstitutional error that does not affect the substantial rights of
a party must be disregarded. Tex. R. App. P. 44.2(b). Examining the argument in light of the
whole record, the trial court's timely admonishment to disregard, and the prosecutor's apology,
we do not conclude appellant's substantial rights were affected. The trial court did not err in
overruling the motion for a mistrial. The second point of error is overruled.

 The judgment of conviction is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices Aboussie, Jones and Onion*

Affirmed

Filed: September 17, 1998

Do Not Publish














* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1988).
1. Section 22.01(a) provides in part:


(a) a person commits an offense if the person


(1) intentionally, knowingly or recklessly causes bodily injury to ano